## POPE v. PRUDENTIAL INS. CO. OF AMERICA.

Circuit Court of Appeals, Sixth Circuit.
November 10, 1928.

No. 4937.

Robert Black, of Cincinnati, Ohio (H. C. Bolsinger, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Wm. Marshall Bullitt, of Louisville, Ky. (R. Lee Blackwell and Bruce & Bullitt, all of Louisville, Ky., on the brief), for defendant in error.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. The plaintiff below brings error, complaining that the trial court directed a verdict against her. She was the beneficiary in a policy upon her husband's life, issued by the defendant. The policy provided that, in the event of his death, she should receive $20,000, and double that amount if his death were the result, "directly and independently of all other causes, of bodily injuries effected solely through external violence and accidental causes," but not if the death resulted "directly or indirectly from disease in any form." The ordinary liability was paid. The double liability was contested, resulting in this action.

Mr. Pope was found to be suffering from a stone in the kidney; an operation for the removal of this stone was thought advisable and was agreed upon; and he died during the operation and as its incidental result. It was the common and expected technique of this operation that a very deep and large incision would be made from the front or side into the abdomen and down to the kidney, which would then be lifted up to or toward the top of the wound, where it would be accessible for the remainder of the work; that the stone would then be located and removed and the kidney would then be let down to and replaced in its former seat. This organ is connected with the abdominal wall by a cluster of ligaments and blood vessels, known as the pedicle; the relation of the kidney and the pedicle being comparable to that of an apple and its stem. When it is first lifted, clamps are slipped underneath it and put upon the artery and the vein so as to minimize the loss of blood. The length of the pedicle is different in different individuals, and characteristically in a man of Mr. Pope's physical type—"short coupled"—it is short. When a patient is also stout or fleshy, as he was, the difficulty of lifting the organ to an operable position, and against the resistance of the pedicle, is emphasized, and there is, typically, substantial danger that, in spite of care and skill, the pedicle will be ruptured by the lifting strain put upon it. This is probably what happened in this case. The pedicle was found to be extremely short and the stone in an unusually inaccessible place, but its removal was completed, the kidney replaced, and the pedicle clamps removed. There was an immediate severe hemorrhage from the vein, it could not be stopped, and the patient died.

It was urged in the trial court on behalf of plaintiff, and is argued here, that in putting the clamps upon the vein there may have been an inadvertent movement leading

to an accidental puncture, and that this would be an "accidental cause" within the meaning of the policy. It is not impossible that the death did occur from this cause; but this could be nothing more than a surmise, there is no substantial evidence to support it; if that were the only tenable theory of recovery, the case would be one where the jury is not allowed to speculate upon the existence of a basis for its finding. Hence, we do not further consider this theory.

It was also urged below and is argued here on behalf of defendant that the fatal result was, in part, due to the diseased and feeble condition of the blood vessels and/or to the shock inherent in the expected operation, and that hence, even if the rupture of the vein was an "accidental cause" of death, it was not the sole cause, and there can be no recovery. Whether these conditions clearly appeared, or whether the claims thereof presented only questions for the jury, we need not consider, in view of the result which we reach upon the more clearly controlling issue. For the same reason, we pass by without notice the contention that the operation and its incidents were the indirect results of the disease indicated by the existence of the stone. We therefore, for the purposes of this opinion, assume that the death was the result solely of the rupture of an undiseased vein, and because the pedicle turned out to be so short and the necessary lift so great that the break could not, with all due precaution and skill, be avoided. It is undisputed that this element of danger is inherent in every such operation; that the surgeon fully understood this; and that he did only what he intended to do and with the technique which he intended to use.

There is no occasion to deny that a death, so resulting, may be in a very proper sense an accidental death; but there is obviously a substantial distinction between an accidental result and the result of an accidental cause. We think it not only to be the natural meaning of the words, as they would be understood by the ordinary policyholder, but the right construction thereof, supported by the weight of authority, that when the insured or those acting with his consent did precisely what they intended to do and in the way which they intended, knowing that injury often did result and might be unavoidable, and where there was no slip or misstep in the performance, and where there was no ignorance of any material factor, this conduct cannot be said to have been the accidental cause of the injury which unfortunately may follow. Some selected decisions which support this conclusion are given in the note.[1]

It remains to notice briefly the reasons and the decisions which are urged contra.

In U. S. Mutual Ass'n v. Barry, 131 U. S. 100–121, 9 S. Ct. 755, 33 L. Ed. 60, the court had to consider whether there was evidence to support a finding that the injury had been caused by accidental means, and to review the definitions given by the trial court. The evidence recited, what the court had said in its charge to the jury, and the comments of the Supreme Court, all indicate that the approved theory of recovery was that there had been some slip or mishap attending Barry's act in jumping to the ground, whereby his intended act was, as to the manner of its execution, transformed into an unintended one. To make the case parallel to the present one, it would have to be assumed that the surgeon in this case, in bringing the kidney up to an accessible point, had some slip or mishap, and exerted the lifting force with some sudden jerk which was accidental. This conclusion would not only be without substantial support, but the direct testimony was to the contrary, that the force exerted was only that which was necessary, and which had been from the beginning intended if the conditions should develop the necessity.

In Western Commercial Travelers' Ass'n v. Smith (C. C. A. 8) 85 F. 401, language is used (page 405) which would indicate that the expected or unexpected nature of the result furnished a criterion for determining the accidental character of the cause. So far as it went to this extent, this comment was not required by the questions involved nor by the Supreme Court decision in the Barry Case. The Smith Case was one where the wearing of a pair of new shoes produced a skin abrasion which became infected, and this infection caused death. Of course, the wearing of the new shoes was intentional, but the skin abrasion was not. It was in itself an accidental result, but it then became the cause of the further injury, and thus was, quite plainly, an accidental cause. In so far as this case tends to confuse the distinction between accidental result and accidental cause, it will be noted that the same general subject was considered by the same court in

[1] Fidelity Co. v. Stacey (C. C. A. 4) 143 F. 271, 273, 274, 5 L. R. A. (N. S.) 657, 6 Ann. Cas. 955; Shanberg v. Fidelity Co. (C. C. A. 8) 158 F. 1, 5, 19 L. R. A. (N. S.) 1206; Maryland Co. v. Spitz (C. C. A. 3) 246 F. 817, 818, L. R. A. 1918C, 1191; Carswell v. Ry. Ass'n (C. C. A. 5) 8 F.(2d) 612; New Amsterdam Co. v. Johnson, 91 Ohio St. 155, 110 N. E. 475, L. R. A. 1916B, 1018; Kendall v. Travellers' Ass'n, 87 Or. 179, 169 P. 751; and Caldwell v. Travellers' Co., 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56.

Shanberg v. Fidelity Co. (C. C. A.) 158 F. 1, 4, 19 L. R. A. (N. S.) 1206. Here the decision is rested upon the very distinction, and it is said that, though the injury itself might be called an accident, it could not be called the result of an accidental means. The case was one where the insured's heart was ruptured as the result of overexertion. The conclusion at least indicates that that court did not continue to adhere to the criterion of the dictum in 85 Federal.

There is also reliance upon a class of decisions which, although they carry the definition of "accidental means" to something of an extreme, yet may be accepted without being applicable here. They are typified by the case of the misplaced artery [Ætna Co. v. Brand (C. C. A. 2) 265 F. 6, 13 A. L. R. 657], and of the hypersusceptibility to novocaine [Mutual Co. v. Dodge (C. C. A. 4) 11 F.(2d) 486]. In each case the actor employing the external force was not only ignorant of °the existence of the condition which destroyed the normal and intended character of his act, but had no reason to suspect such a condition. In the first case, the surgeon's needle, used as he intended under conditions which he supposed existed, pierced an artery which was abnormally located, the existence of which at that point he had no reason to suspect; in the second case, the patient had an idiosyncrasy so rare that the danger of its existence was professionally regarded as negligible; in each case this unknown condition brought fatal results from the intended and otherwise harmless act; to the extent that the act encountered these conditions, its performance was perhaps accidental. This breadth of definition can well be conceded without reaching a case where the condition which developed was known to be not uncommon, and where there was full purpose to assume whatever risk of accidental result there might be if this dangerous condition were found to exist.

Upon the whole, we are satisfied that if the words "accidental means" are taken "in the sense conveyed to the ordinary reader" (Judge Hook in Railway Mail Ass'n v. Dent [C. C. A. 8] 213 F. 981, 983, L. R. A. 1915A, 314), or in the usage of the average man and not of the scientist (Judge Cardozo, in Lewis v. Ocean Co., 224 N. Y. 18, 20, 120 N. E. 56, 7 A. L. R. 1129), they may not, merely because a reasonably anticipated condition was found to exist to such a degree that the inevitable risk was sharply increased, rightly be interpreted as covering the performance of a surgical operation with due skill and in the expected manner; and beyond this, the proof of "accidental means" does not go.

The judgment is affirmed.