## MARYLAND CASUALTY CO. v. MASSEY.

Circuit Court of Appeals, Sixth Circuit.
February 6, 1930.

On Rehearing April 15, 1930.
No. 5235.

Hickenlooper, Circuit Judge, dissenting.

E. B. Klewer, of Memphis, Tenn. (Klewer, Gailor & Exby, of Memphis, Tenn., on the brief), for appellant.

H. D. Minor, of Memphis, Tenn. (Burch, Minor & McKay, of Memphis, Tenn., on the brief), for appellee.

Before MOORMAN and HICKEN-LOOPER, Circuit Judges, and SIMONS, District Judge.

SIMONS, District Judge. This is a suit upon an accident insurance policy issued to John T. Massey, in which the plaintiff was named the beneficiary in the event of death. On the morning of February 22, 1927, the insured, while in excellent health, plucked a hair from his nose. Thirty-six hours later evidence of infection developed, and on the 24th a pimple had formed on the base of his nose. This was given medical attention, but septicemia of a violent type had set in, and the insured died on March 1st. Blood specimens showed the presence of a germ known as the staphylococcus, a pyogenic or pus-forming germ. The insured held a policy in the Maryland Casualty Company, hereinafter referred to as the defendant, in the sum of $30,000. The policy covered death effected through accidental means, and provided that, in event of accidental death, immediate notice must be given to the insurer, and that affirmative proofs of loss must be furnished to it at its office within 90 days after the date of the loss. Upon the trial, defendant moved for a directed verdict in its behalf, and offered no evidence. The case was submitted to the jury and a verdict returned for the full amount of the policy.

Two main questions are involved: First, was the death due to injury effected through accidental means; and second, was the defendant given immediate notice of the death and furnished with affirmative proofs of loss within the time provided for in the policy.

The insuring clause of the policy insures "against loss resulting from bodily injuries, including death resulting therefrom, effected independently and exclusively of all other causes directly through accidental means." Part G, relating to coverage in event of death from septicemia, or blood poisoning, provides:

"Subject to its terms, limits and conditions, this policy covers the insured in the event of death * * * or disability from septicemia or blood poisoning due directly to injuries effected as hereinbefore provided and sustained while this policy is in force."

Among the "additional provisions" of the policy is clause 22, which is as follows:

"This policy shall not cover accident, injury, disability, death, or other loss caused or contributed to directly or indirectly wholly or partly, by bodily or mental infirmity, ptomaines, bacterial infections (except pyogenic infections which shall occur simultaneously with and through an accidental cut or wound effected as hereinbefore provided), or by any other kind of disease. * * *"

The medical testimony was to the effect that a hair is imbedded in a follicle; that the plucking of a hair will leave a tiny orifice in the skin or mucous membrane which may provide a port of entry for pyogenic germs into the blood stream, or the lymph stream; that staphylococcus germs are usually present upon the skin; that infection from the plucking of a hair, while not wholly unknown, is very unusual; that any injury to the skin or mucous membrane may provide a port of entry for pyogenic germs; that it is difficult for the physician in a given case to determine the exact port of entry.

■ The policy covered death from bodily injuries effected directly through accidental means. Some effort is made to interpret the policy as covering death from all accidental injuries, however effected, in reliance upon the designation "Perfection Accident Policy" printed upon the outside and at the top of the contract, followed by the statement that it "provides indemnity for death * * * due to accidental injuries." It is sufficient to say that such designation is not part of the contract, that it is merely an indication of its general nature, and that the qualifying phrase, "as herein limited and provided," is a sufficient challenge to the holder that the terms of the policy rather than any general designation are to be looked to for the measure of protection provided.

■ There is substantial distinction between "accidental injuries" and injuries effected through "accidental means," or as it was put in a recent decision by this court [Pope v. Prudential Insurance Co., 29 F.(2d) 185], between accidental result and the result of an accidental cause. Conceding to the beneficiary in the Pope Case the utmost breadth of definition for the rule of liability under policy provisions similar to those here considered, there was found to be no accidental cause to the death there involved. Stating the rule in its broadest aspect, it was in the Pope Case considered that there cannot be said to be an accidental cause of any injury when the insured or those acting with his consent did precisely what they intended to do and in the way which they intended, knowing that injury often did result and might be unavoidable, and where there was no slip or misstep in the performance, and where there was no ignorance of any material factor. Illustrative cases are sufficiently cited in a note to Judge Denison's opinion in that case.

For reasons presently to appear, we find it unnecessary to consider whether infection was a result which the insured might have known or might reasonably have anticipated would follow the voluntary plucking of a hair, nor whether his ignorance of the presence of pyogenic germs was such ignorance of a material factor as would destroy the normal and intended character of his act. Nor do we here consider the soundness or applicability of any holding by which the unexpectedness or unusualness of a given accidental result is made the criterion for determining whether or not an act which brought it about is an "accidental means." It is sufficient to note that in the Pope Case, the holdings of Ætna Co. v. Brand (C. C. A.) 265 F. 6, 13 A. L. R. 657 (the case of the misplaced artery), and Mutual Co. v. Dodge (C. C. A.) 11 F.(2d) 486, 59 A. L. R. 1290 (unknown hypersusceptibility to novocaine), were considered among decisions which carry the definition of "accidental means" to something of an extreme, yet might there be accepted without being applicable. We need go no further than that in relation to such phases of the rule of liability, for in the instant case it fairly appears from the record to a majority of this court that, whatever may have been the intended character of Massey's act, there was a slip or misstep whereby his intended act was as to the manner of its execution transformed into an unintended one. U. S. Mutual Acc. Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60.

Massey pulled a hair from the inside of his nose, presumably at the spot where the skin of the lip meets the mucous membrane of the nostril. Septicemia resulted, followed by death. The District Judge submitted the case to the jury, with instruction to find for plaintiff if Massey died from blood poisoning induced from his pulling a hair from his nose which caused a wound into which pyogenic germs entered at or about the time such wound was made. The jury so found. If Massey's act produced a wound by tearing or abrading the skin or membrane, certainly such wound was not intended, and it may be reasonably presumed that infection occurred simultaneously with and through such wound. Does the record sustain the instruction of the court and the finding of the jury? We find ourselves in this respect confronted with the identical question that was before the Supreme Court in the Barry Case, supra. Dr. Barry jumped from a platform after two companions had jumped before him. They alighted safely. Dr. Barry landed on his feet, but heavily with some shock. The result was a ruptured duodenum causing his death. The theory of recovery was that there was

some mishap in the jump whereby the intended act was in the manner of its performance transformed into an unintended one. Dr. Barry jumped after two companions had alighted safely. Mr. Massey pulled a hair from his nose after millions of persons had pulled hairs from nose or head or eyebrows without injury. Dr. McElroy for plaintiff beneficiary testified that most always an injury is required to produce a port of entry (for pyogenic germs); it is scarcely possible for the germ to enter the skin without some injury to the skin. Dr. Klewer stated that it is possible for these organisms (pyogenic germs) to get into a wound while a man is shaving, or through a scratch abrasion of any kind. The rubbing of the skin or abrading it could cause a sufficient port of entry. It is a question whether these germs will enter without breaking down or abrading the skin, and there is a difference of opinion among reputable medical men on that point. Dr. Cullings testified that it is possible to cause sufficient abrasion of the mucous membrane to make a port of entry by rubbing the nose; and also possible to cause a sufficient abrasion by cleansing the nose with a towel or wash cloth. There was also testimony, of course, that the opening into the follicle, from which the hair was removed, might be a sufficient port of entry for germs, but that such cases were extremely rare. We think the instruction of the court and the finding of the jury thereon within the evidence, and on this phase of the case, were it not for conclusions reached on another point, the judgment would be affirmed.

The requirement for notice to be given immediately in the event of accidental death is by the policy qualified in the event that it is not reasonably possible to give such notice. In the light of the pleading setting up an excuse for failure to comply with the notice provision, the evidence introduced in support of such pleading, and the submission of the issue of fact thereby presented to the jury, with the resultant verdict for the plaintiff, we find no error in the refusal of the District Judge to give a peremptory instruction for the defendant on the ground of failure to give immediate notice of death.

The contention that affirmative proofs of loss were not furnished within the time provided in the policy presents a greater obstacle to affirmance of the judgment below. The policy provides for the furnishing of such proofs in the event of death within ninety days after the loss. They were furnished on the ninety-first day, though substantially prepared within the period of limitation, and

were returned with denial of liability because not filed within the agreed time and for other reasons. There is in relation to the requirement for proofs of loss no qualifying provision in the policy similar to the one with respect to notice. Such periods of limitation have been held to be valid provisions of the policy, and compliance therewith a condition precedent to its enforcement. Callen v. Massachusetts Protective Association (C. C. A.) 24 F.(2d) 694; Travelers' Insurance Co. v. Nax (C. C. A.) 142 F. 653; Whiteside v. North American Insurance Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696. In fact, the law in this respect is not challenged by the plaintiff, who presents but two grounds for not applying the rule in the instant case. It is first argued that the retention of the proofs of loss for 8 days before their return in some manner waived the contract requirement to furnish such proofs. Reliance is had upon Hartford Co. v. Empire Co. (C. C. A.) 30 F.(2d) 794, 802. The case is not in point. There proofs of loss were furnished, and the only question was as to their sufficiency. The trial judge instructed the jury that proper proofs were furnished; the appellate court considered the question immaterial, because the proofs were retained by the company for seven weeks and then returned with a denial of liability, and there was the further fact that a position denying liability had been taken by the company before the proofs of loss were furnished. In Continental Insurance Co. v. Fortner, 25 F. (2d) 398, this court placed no reliance upon the mere retention of proofs of loss furnished after the period of limitation, as affecting waiver.

In the present case, the second ground relied upon by the defendant as an answer to the defense of failure to furnish proofs of loss is one based upon a claimed rule of pleading in force in the Tennessee courts. The plaintiff filed replication to the special plea of the defendant in which it sought to set up excuses for failure to furnish proofs of loss. The defendant joined issue upon these replications. Because the defendant did not demur to the replications, nor move to strike them out, it is claimed now that it admitted the sufficiency as a matter of law of the facts therein alleged and proved at the trial. This contention is not convincing nor sustained by the authorities cited.

There is no other claim of waiver of the ninety-day provision, no attack made upon its reasonableness under the statutes or the law of Tennessee, and no claim made that the plaintiff was lulled into the belief that formal proofs of loss were unnecessary so as to

create an estoppel, such as was considered in Alliance Insurance Co. v. Enders (C. C. A.) 293 F. 485.

It has been argued that in a given case notice of death may be sufficiently formal and complete to answer all of the requirements of proofs of loss, and that in such case failure to comply with the ninety-day provision would be immaterial. Here the record contains no exhibit of the notice, nor evidence of its contents. We can draw no inference that it went further than merely complying with the requirement of the policy as to its sufficiency "with particulars sufficient to identify the insured." No description of what is meant by affirmative proofs of loss or their sufficiency is contained in the policy. It is clearly contemplated, however, that proofs be made on forms supplied by the defendant, and some light is thrown upon their very minimum requirements by the provision made in case the company failed to furnish forms. In that event, "written proofs covering the occurrence, character and extent of the loss" furnished within the time would be deemed a compliance with the policy. These are much greater requirements than those provided to be contained in the notice. The sections of the policy dealing with notice and proofs of loss are printed in the margin.[1]

[1] *Time of Notice of Claim.* 4. Written notice of injury on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury. In the event of accidental death immediate notice thereof must be given to the Company.

*Sufficiency of Notice.* 5. Such notice given by or in behalf of the Insured or beneficiary, as the case may be, to the Company at Baltimore, Md., or to any authorized agent of the Company, with particulars sufficient to identify the Insured shall be deemed to be notice to the Company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

*Forms for Proof of Loss.* 6. The Company upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

*Time for Filing Proof of Loss.* 7. Affirmative proof of loss must be furnished to the Company at its said office in case of claim for loss of time from disability within ninety days after the termination of the period for which the Company is liable, and in case of claim for any other loss, within ninety days after the date of such loss.

With full appreciation of the rule that the law does not favor forfeitures, and the further rule that ambiguities in a policy will be construed strictly against the insurer who drafts it, and unfortunate as the single day's delay may be in the instant case, we can find no sound basis in law for striking down a provision in the contract ordinarily held valid and enforceable.

We conclude that the District Judge was in error in failing to grant the defendant's request for a directed verdict, and the judgment below is reversed.

MOORMAN, Circuit Judge (concurring). I concur in the result, not only because the record shows that there was a failure to file proofs of loss within the time provided in the policy, but for the further reason that in my opinion there was no substantial evidence upon the main issue to submit to the jury. Upon that issue it was necessary for plaintiff to show, among other things, a "cut or wound." The only basis for such an inference in the evidence is that sometimes the plucking of a hair will cause an abrasion. This happens so rarely, though, that, when it does happen, it is thought by Judge SIMONS to be a "slip or mishap" within the meaning of the Pope Case. I do not agree with that view, but accepting it for present purposes, I still think the evidence was not sufficient to take the case to the jury. It is rare, extremely rare, for an infecting germ to enter the blood through an abrasion caused from the pulling of a hair. It may enter through the orifice which is left and cause septicemia where there has been no abrasion, or perhaps even through the mucous membrane, as the medical proofs show. In this case the decedent plucked a hair from his nose, and several hours later a pimple appeared at or near that place which became or was infected. The jury was permitted to infer from these facts, or surmise, as it seems to me, that the infection entered through the orifice from which the hair was pulled, and to draw from that inference the further inference that there was an abrasion or tearing of the skin; the latter inference being based upon the former, with the additional evidence that an abrasion may occur when a hair is pulled. I do not think the jury should have been permitted to speculate upon this latter possibility.

HICKENLOOPER, Circuit Judge (dissenting). I concur in the conclusion that death, under the circumstances detailed in the foregoing opinion of the court, was cov-

ered by the policy and within the risks against which appellant insured. Whatever interpretation may properly be given to the general insuring provision where death occurs as the result of a major surgical operation [Pope v. Prudential Ins. Co., 29 F.(2d) 185 (C. C. A. 6)], part G and clause 22 of the policy here involved relate specifically to septicemia and pyogenic infections, and thus, by familiar rules of construction, remove these subjects of consideration from the general insuring provision, unless the phrases, "subject to its terms, limits and conditions" and "effected as hereinbefore provided," may be said to inject into these sections also, the condition that the wound through which infection enters must not only be accidental in the popular sense, but also wholly disconnected with any intentional act of the insured. Practically all accidental cuts or wounds are directly connected with the performance of some intentional act, working, walking, running, playing, shaving, and the like; and to say that, because the injury, itself purely accidental, was attended by the doing of some such intentional act, it is therefore excluded from the operation of the policy under the quoted phrases, is indeed wholly foreign to popular construction of the passages involved.

Part G states that the policy covers in the event of death from septicemia "due directly to injuries effected as hereinbefore provided." Clause 22 extends the coverage to "pyogenic infections which shall occur simultaneously with and through an accidental cut or wound effected as hereinbefore provided." To me these apparently mean that, where an infection is the basis of claim, as distinguished from the accidental cut or wound, the policy covers if the infection occurs simultaneously with, and the seat of infection is found in, such purely accidental cut or wound, although the cut or wound itself is suffered while in the doing of an intentional act. Such is the plain, simple, common sense, and popular construction which practically every prospective purchaser of a policy would give to its provisions, and as such should be followed. Canton Ins. Co. v. Indep. Transp. Co., 217 F. 213, 214, L. R. A. 1915C, 408 (C. C. A. 9). No insurer should be permitted to sell a policy so susceptible to one construction by the insured, and to escape liability by subtle phraseology and niceties of interpretation, under which the meaning now claimed is far from obvious upon unstudied reading. Needless to say, all doubts should be resolved against the insurer. Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L.

Ed. 408; Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 136, 21 S. Ct. 326, 45 L. Ed. 460; Schambs v. Fidelity & C. Co., 259 F. 55, 58, 59, 6 A. L. R. 1231 (C. C. A. 6).

I am further of the opinion that the death here involved is within even the general insuring provision. The numerous cases construing the phrase, "effected through accidental means," can only be reconciled upon the principle that death or injury is caused by accidental means if some accident, unforeseen circumstance, mishap, or casualty intervenes between the intentional act and the death or injury. This was made the basis of decision in U. S. Mutual Acc. Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60, and practically all cases, whether recovery was allowed or denied, may be so reconciled; just as, in practically all, the insured was engaged in some intentional act when injured. Here we have the intervention of accident or mishap in the unexpected tearing of the mucous membrane, providing a "port of entry"; the fact of such tear being reasonably inferable, I think, from the evidence. This tear was unanticipated and unforeseen, was not itself an injury for which recovery is sought, for *its* cause was an intentional act; but it may and should be regarded as the intervening and efficient accidental cause of death of the insured, for which compensation is sought. It is thus in itself an "accidental means," independent of the antecedent intentional act as a factor of causation. I therefore feel that for both reasons the finding of liability under the policy is correct.

I cannot concur in the conclusion that, if it be conceded that plaintiff had a valid claim under the policy, such claim was lost by failure to file proofs of loss within ninety days. It is true that clause 7 provides that "affirmative proof of loss" must be furnished to the company at its said office within ninety days after the date of such loss, and clause 23 provides that failure to comply with any of the requirements contained in the policy shall invalidate all claims thereunder. Clause 6 provides that the company will furnish forms for filing proofs of loss, upon receipt of notice, and, if such forms are not so furnished within fifteen days, the claimant shall be deemed to have complied with the requirements of the policy in this respect upon submitting, within the time fixed, written proof "covering the occurrence, character and extent of the loss for which claim is made." There is no other definition of "proof of loss" than is to be gathered from these passages. Time is not made of the essence of the contract. The position of the appellant can be

sustained in this case only by placing upon these provisions the extremely technical construction that proofs of loss *must be made only upon blanks furnished by the company* if such blanks are furnished to the claimant within fifteen days after notice of loss, and such formal proofs must be positively completed and punctually filed within ninety days, notwithstanding intervening difficulties, and regardless of the sufficiency of other notice or the completeness of its detail. Forfeitures are not favored, and, unless forced so to do by clear and compelling language, the courts should not thus defeat an otherwise meritorious claim.

The sole purpose of proofs of loss is manifestly to advise the company promptly and precisely of the nature of a claim of liability. Immediately the claimant was advised of the existence of the policy, written notice was given to the defendant. This letter was in the possession of the company and was not produced at the trial, although it is in evidence that it was mailed and received. Certain it is that there is not one word of evidence in the record that the company was not fully, definitely, and formally advised of all the elements of "occurrence, character and extent of the loss," or that it was deprived of any substantial right by slight delay in filing proofs on the company's forms.

The defense is an affirmative one, and the burden was upon the company to prove that it had received no proofs of loss within the ninety days, or the nature of the proof it did receive. Had the policy expressly made it a condition precedent to recovery that the plaintiff establish service of proofs of loss within ninety days, doubtless the burden of showing the contents of this letter would have been upon the claimant; but such is not the present situation, and possession of the letter by the defendant, and its failure to produce it, would seem to justify the inference that it contained all the information which the company desired—that it only remained to put such information into formal shape. The plaintiff pleaded in her replication that the provision had been substantially performed, and, since the defendant offered no evidence of its breach, the plaintiff was relieved of proving this allegation in rebuttal. There is no necessity, therefore, to infer or inquire as to the contents of the letter. Upon the pleadings and evidence, the question was explicitly one of the sufficiency of the proofs furnished,

in which the defendant had the burden of showing them insufficient and offered no evidence. Cf. Hartford Co. v. Empire Co. (C. C. A.) 30 F.(2d) 794, 802.

Thus form and formality are preferred to substance, and technicality to susbtantial rights. And this in a case in which no prejudice to the defendant is claimed or shown, and time was not of the essence of the contract, expressly, naturally, or inherently. Under the circumstances disclosed, I am of the opinion that susbtantial compliance was not disproved and forfeiture should not be decreed.

On Petitions for Rehearing.

PER CURIAM.

Appellant's petition is directed to a reconsideration of the opinion of the court holding the death due to accidental means. Nothing substantial is presented that was not fully considered upon the original hearing, and we think the petition should be denied. The appellee's petition calls attention to a fact not brought to notice of either this or the District Court, namely, that the last day of the period within which the beneficiary was required to furnish proofs of loss was May 30th, which under the statutes of the United States and the laws of Tennessee is a legal holiday. This may aid appellee, who mailed proofs of loss on the ninety-first day, only if circumstances in connection with the furnishing of forms for proofs of loss through the general agent are such as to raise the issue whether or not they were to be returned the same way, and if they were, from what was stated in the claimed telephone conversation, whether the mailing of the proofs may be regarded as the delivery of them to the general agent as of that day. No such issues are presented by the present record. We think that in so far as appellee's petition asks that reversal be set aside and an order of affirmance entered, it should be denied; but that in view of the new matter presented, the cause should be remanded to the District Court for a new trial, at which it is expected the evidence will more fully cover these issues and also show the contents of the letter serving as notice of loss, so that a correct decision may be arrived at in the light of our comment upon that subject.

Reversed and remanded for new trial.