## MASSACHUSETTS MUT. LIFE INS. CO. v. MAYO. *

### No. 7803.

Circuit Court of Appeals, Ninth Circuit.

Jan. 27, 1936.

*Rehearing denied March 23, 1936.

Joseph C. Cheney, Elwood Hutcheson, and Cheney & Hutcheson, all of Yakima, Wash., and Raymond G. Wright, Harry B. Jones, and Robert E. Bronson, of Wright, Jones & Bronson, all of Seattle, Wash., for appellant.

Nathan C. Richards and Ian R. MacIver, of Richards, Conklin & Delle, both of Yakima, Wash., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an action to recover on two insurance policies under which the Massachusetts Mutual Life Insurance Company, appellant herein, agreed to insure Charles A. Mayo, appellee, against total and permanent disability. Appellee alleged that he had been totally and permanently disabled at all times from and after the latter part of the year 1929; that premiums were payable quarterly and that on policy No. 602,-259 the quarterly premium was paid August 8, 1930, which would continue the policy in effect until November 8, 1930; that on policy No. 722,764 the last quarterly premium was paid July 2, 1930, which continued the policy in force until October 2, 1930. These policies contain the following provision with reference to total and permanent disability:

"If the insured before default in the payment of any premium under this policy and before the anniversary of the policy on

which his age at nearest birthday is 65 years, shall furnish due proof to the company at its home office that he has become wholly and permanently, continuously and wholly prevented thereby from performing any work or engaging in any occupation for compensation or profit, the company will

"(1) waive the payment of all premiums becoming due under this policy after the expiration of the then current policy year; and

"(2) pay to the insured one per cent of the face of this policy, exclusive of any paid-up additions, and a like amount each month thereafter during the continuance of said total disability of the insured.

"Any premium after the first may be paid when not more than thirty-one days past due, during which period the policy will be continued in full force."

■ The case was tried before a jury which found for the plaintiff and fixed the date of total and permanent disability of the plaintiff as October 28, 1929. The trial judge withdrew from the jury the issue with relation to the presentation of due proof of total and permanent disability and the waiver thereof, holding that as a matter of law it had been established that said proofs had been waived and that the appellant was estopped from relying upon the provision of the policies requiring due proof. The court stated its position in that regard as follows: " * * * all questions of due proof, waiver and estoppel being withdrawn from the jury; upon the ground that the undisputed facts would be, as a matter of law, that the company waived the policy requirement of due proof before lapsation, and upon the further ground that the undisputed evidence established facts estopping the company from asserting as a defense, the failure of the plaintiff to make due proof of disability within the time specified in the policies; and that upon the record in this case, the question of waiver and estoppel is one of law and not of fact."

The principal question urged upon this appeal is as to whether or not the conclusion of the court that waiver and estoppel had been established as a matter of law was correct. The facts in that regard are not in dispute, and we think the court correctly decided that where the facts are undisputed the questions of waiver and estoppel were questions of law to be decided by the trial court. The question then is

whether or not the conclusion of the court that the provision of the policies requiring due proof of total and permanent disability before the policies had lapsed by reason of nonpayment of the premium was waived.

Under the terms of the policies, the right to the payment of total and permanent disability benefits depended upon the furnishing of due proof of disability "before default in the payment of any premium under this policy." The right to such benefits and to the waiver of the future premium payments are predicated under the terms of the policies upon the filing of due proof of such disability. In this connection it should be stated that the trial court relied strongly upon the indorsement upon the policy as follows:

"The policyholder is requested to read this policy, that he may be informed of its provisions.

"To collect the amount payable under this policy, it is not necessary to employ any person, firm or corporation. Time and expense will be saved by writing direct to the Home Office at Springfield, Massachusetts, or to an agency of the company."

The general agent of the company for the state of Washington, with offices at Seattle, was Arthur H. Challiss. On March 13, 1930, before default in payment of premium under the policies the appellee wrote Challiss from Yakima, Wash., to Seattle stating his physical difficulties due to sinus infection and operations therefor, stating that although operated upon in January "it is the middle of March and I am still out." He further stated that he would either have to have an operation or go to Arizona or New Mexico for a change of climate. We quote from the balance of the letter as follows:

"I do not know what to do. Have practically exhausted what reserves I had in the way of savings and investments, and have not been able to do anything except drag around in a more or less miserable fashion since the middle of last October. Am I eligible for disability under our policy with M. M.? I am trying to sell our home to get additional funds to live on until I see what is going to happen to me, but am afraid I shall lose my policies, and will not be able to get more in my present condition. Let me know what you think about it.

"I believe my indebtedness to you is cleared in full with this month's payment

so that I will have a small income there that would keep the policies in force if worst comes to pass, and I am unable to keep them up otherwise."

To this, reply was received signed "General Agent" stating, among other things, as follows:

"As far as the disability provision in your Massachusetts Mutual policy is concerned, you, of course, know that it covers only total and permanent disability, in other words, complete loss of earning power, and I cannot see how you could possibly qualify for the benefits at this time. You would have to be in a condition where you could not do any work and where it would be unlikely that you would ever be able to do so. In other words, your situation is one where health insurance would be highly desirable, and I hope you have some of that.

"I do hope that you will be able to keep your life insurance policies in force."

Thereafter, the appellee visited Philip Englehart in Yakima, Wash. Englehart was a soliciting agent for the insurance company, but with knowledge of the company he used the title "Associate General Agent." Appellee told Englehart of his physical condition, that he was not able to do any work, and asked him to write for blanks on which to apply for compensation under the permanent disability clause of the policies. In pursuance to this letter, on May 9, 1930, Englehart wrote Challiss as general agent of the appellant at Seattle, Wash., as follows:

"Charles Mayo was in today and he seems to be suffering from sinus trouble and has been for several months. He says that the doctor suggests that he leave the country and he is completely out of the running. He wants to apply for total disability under his policy.

"Will you please send the necessary form to me?"

In reply to this letter, a letter was received by Englehart signed "General Agent," which was as follows:

"We have today received your letter of the 9th with reference to Mr. Mayo making application for benefits of the disability provision under his policy. Mr. Challiss states he feels quite sure that Mr. Mayo does not come within the scope of this provision at the present time, as it does not seem that he is now and will be totally and permanently disabled, and be-

fore writing to the company for disability claim papers we would like to hear from you further. Do you think he is now and will be permanently and totally disabled? If you feel we should secure the claim papers we shall be glad to do so, although Mr. Challiss states he believes it might prejudice the company against the case if claim were presented at this time and not allowed and later on it should develop that he was totally and permanently disabled.

"We will await further advice from you before writing the company." (Postscript is omitted.)

Shortly thereafter Englehart wrote Challiss, general agent, to drop "the disability matter for the present." The appellee testified he did not authorize Englehart to make such a request. On October 16, 1930, appellee wrote Challiss stating his financial condition, that he had been unable to meet the premiums on his policies and that his insurance had all lapsed. After describing his physical condition, he stated: "I wish you would write to Dr. Bline, check up on my condition to him as I feel I should be entitled to some relief. I am facing a second winter of sickness without funds and without insurance and it seems to me that my disability should be total and permanent enough to satisfy the most exacting." To this, a reply in part as follows, was received, signed "General Agent." "I was very sorry that it was necessary for you to lapse your insurance, but know that it was simply impossible for you to retain it.

"I note what you say with reference to the matter of disability, and we shall be glad to write Dr. Bline at once, as you suggest, asking him for full particulars in regard to your condition, and shall pass the same on to the company. Of course, you understand that the disability clause in your policies covered only permanent disability, and it will simply be a question as to whether yours can be considered total and permanent disability; that the company will have to decide after all information has been presented."

In pursuance to this correspondence Challiss, as general agent, wrote to Dr. Bline on October 17, 1930, requesting a statement as to the appellee's disability. This letter was answered on October 28, 1930, in part as follows: "As his condition is now a chronic one, he will probably continue to have more or less trouble indefinitely although not necessarily of a dis-

abling nature. He has been at work practically all of the time that he has been under my care, except for a few days following operation." On November 12, 1930, Challiss, general· agent, informed appellee that it would be impossible for the company "to class your trouble as total and permanent disability." On January 12, 1931, appellee replied that he had again seen Dr. Bline, who told him he certainly would come under the classification of "total and permanent disability." Appellee stated, "My disability dates from October 28, 1929, and has been continuous since that time." He further states, "I have never gone back to work since a year ago last October. I wish you would send to the company for necessary papers on which to·apply for disability as I owe it to myself and family to at least make an attempt to salvage my insurance." Challiss, on January 20, 1931, sent this letter to Dr. Bline and stated: "Before taking the matter up with our company I shall appreciate hearing from you further in regard to this case." On January 21, 1931, Challiss wrote to Mayo stating that nothing could be done without a letter from Dr. Bline "far different from the one which we received from him on October 28th." The letter stated that if a new letter was obtained from Dr. Bline setting forth the facts as outlined in appellee's letter of January 12th "stating definitely that he considers your condition one of total and permanent disability, then we will be in a position to take the matter up with the company and should be able to do something for you. The ·first thing for you to ·do is to secure this letter from Dr: Bline and I shall then be glad to do what I can." On January 22, 1931, Dr. Bline. wrote to Challiss stating in substance that appellee's condition had not improved, that he could not state exactly the date on which we may say "he became totally disabled." On January 23, 1931, Challiss wrote to Mayo a letter signed "General Agent" stating that he doubted whether the company would do anything because Dr. Bline had stated rather definitely that "your case would not be considered as permanent total disability." He added that he was for-. warding the statements to the company for action. On the same day he did forward the letters received from Mayo and Dr. Bline to the home office stating the Mayo policies had lapsed, and, "We shall appreciate your advice as to whether or not this might come within the scope of the waiver and annuity provisions contained in Mr. Mayo's policies." On January 28, 1931, J. T. Wells, assistant secretary, acknowledged the letter, stating, among other things, that the case had been carefully considered, but nothing was found indicating that the assured's disability would qualify for benefits "under the clause contained in these policies, either as to total or presumable permanency," adding, "we would suggest that you point out to the insured that the disability clause contained in his policies mentioned both contemplates coverage only in the event of total and permanent disability." On February 3, 1931, Challiss, as general agent, wrote to the appellee stating that the company had given careful consideration to the papers submitted in his case and that the company found nothing which would indicate that the disability was either total or permanent, adding "the disability clause contained in your policies contemplates coverage only in the event of total and permanent disability."

The advice of the general agent that the appellee postpone the filing of the claim was evidently given and accepted on the theory that the appellee would continue his policies in force by payment of the premiums as and when they become due. That the appellee so understood is clear from the correspondence, for he discusses his ability so to do and later presents his inability so to do, thus indicating his understanding of the advice he received. Later he referred to his policies as having lapsed by reason of his failure to make payments of the premium. Up to this point there is neither estoppel nor waiver, and the appellee fully understood this situation not only by reason of his knowledge of the policies and its contents and· his general knowledge of the insurance business, but also because he had been expressly so advised. However, the conduct not only of the general agent of the company, but also of the assistant secretary thereafter, indicates a. waiver by implication arising from the knowledge on the part of the company that the policies, according to their terms, had lapsed and the solicitation by the general agent of the company of additional evidence upon the basic question of liability, that of total and permanent disability. The company clearly manifested an intention to pay the claim if it should develop that the insured was in fact totally and permanently disabled and that such disability related back to a time when the policies were in full force and effect. The appellee acted upon the sug-

gestion of the general agent and furnished additional proof, and this proof was accepted by and acted upon by the home office. It is true that the action was unfavorable, but the rejection was not based upon the failure of the appellee to pay premiums due upon the policies, but upon the failure to show total permanent disability during the time the policies were in force. The company was obligated from October, 1929, to pay appellee the disability benefits provided in the policies. When the unpaid premium became due, the obligation of the appellant to the appellee exceeded the amount of the premium which would be due from the appellee to the appellant. These rights of appellee, however, were contingent upon the filing of a proper claim of disability before the policies lapsed because of nonpayment of premium unless waived. The acceptance and consideration of proof of the appellee's disability with full knowledge that premiums due under the policies had not been paid, together with the correspondence suggesting that the appellee make other and supplemental proof and the furnishing of the same by the appellee, constituted a waiver of the requirement that the proof be filed before the nonpayment of the premium. In view of such waiver no premiums were due from the appellee, if as the jury found the fact to be, he was totally and permanently disabled from and after October 28, 1929.

While it is true that the company could have stood on the terms of the policies and in doing so would have entirely defeated the right of the appellee to recover on the policies, its conduct after the so-called lapsing of the policies by reason of nonpayment of the premium, effectually waived the requirement for proof of disability before lapsation for nonpayment of premiums. The company had a right to waive this requirement, notwithstanding the fact that it had a complete legal defense to the policies. Although it might have withdrawn its waiver, if the appellee had not acted upon its invitation to send in additional proof, such invitation and its acceptance and the subsequent action of the company in rejecting the claim on an entirely different ground than that of failure to file proof as required by the terms of the policies estopped the company from advancing the defense of nonpayment of premium before proof of loss.

■ The appellant contends that in all this correspondence Challiss was acting only in a friendly capacity, and that he was not acting on behalf of the company. It is true that the correspondence indicates that the appellee and Challiss were friends, had worked together for this same company, and that the tone of the letters is undoubtedly influenced by this fact. Nevertheless the communications from appellee, Mayo, were written to Challiss because of his connection with the appellee, and his replies were all signed by him in his capacity as general agent. When the papers were finally submitted to the home office, the proof was rejected, not because it was presented too late, nor because submitted to the general agent instead of the home office, but because it did not show total and permanent disability. It is clear that Challiss was acting for the appellant throughout the transaction.

The appellant relies upon a number of decisions of the federal court in which it has been held that the evidence was insufficient to establish a waiver of certain requirements of the insurance policies therein involved with relation to the proof of loss, or with relation to the time for initiating an action against the company. It is also claimed that nothing said or done after the lapsing of the policies could prejudice the appellant because the appellee had no right at that time which might be taken away, and it is urged that there can be no waiver or estoppel by reason of anything occurring after lapsation. In support of these propositions, appellant cites the following cases: Globe Mut. Life Ins. Co. v. Wolff, 95 U.S. 326, 24 L.Ed. 387; Northern Assur. Co. v. Grandview Bldg. Ass'n, 183 U.S. 308, 22 S.Ct. 133, 46 L.Ed. 213, 233; Bakhaus v. Germania F. Ins. Co. (C. C.A.) 176 F. 879; Hubbard v. Mutual R. F. L. Ass'n (C.C.) 80 F. 681; Lewin v. Telluride Iron Works Co. (C.C.A.) 272 F. 590, 598; Coleman Furn. Co. v. Home Ins. Co. (D.C.) 4 F.Supp. 794; Id. (C.C.A.) 67 F.(2d) 347, certiorari denied 291 U.S. 669, 54 S.Ct. 453, 78 L.Ed. 1059; Equitable Life Assur. Soc. v. McElroy (C.C.A.) 83 F. 631, 638; Bankers' Trust Co. v. American Surety Co., 112 Wash. 172, 191 P. 845; Reilly v. New York Life Ins. Co. (Wash.) 47 P.(2d) 840; Maryland Cas. Co. v. Nellis (C.C.A.) 75 F.(2d) 23; Murray v. American Surety Co. (C.C.A.) 69 F.(2d) 147; National City Bank v. National Sec. Co. (C.C.A.) 58 F.(2d) 7; Travelers' Ins. Co. v. Nax (C.C.A.) 142 F. 653; Maryland Cas. Co. v. Massey (C.C.A.) 38 F.(2d) 724, 71 A.L.R. 1428, certiorari de-

nied 282 U.S. 853, 51 S.Ct. 30, 75 L.Ed. 756; Fountain & Herrington v. Mut. L. Ins. Co. (C.C.A.) 55 F.(2d) 120; Becker v. Interstate Business Men's Acc. Ass'n (C. C.A.) 265 F. 508. We feel it unnecessary to analyze and distinguish these various cases. To do so would unduly extend this opinion.

In withdrawing from the jury the question of estoppel and waiver, the trial court relied upon a recent decision by the Supreme Court of Washington, Reynolds v. Travelers' Ins. Co., 176 Wash. 36, 28 P. (2d) 310, which supports the view that under the circumstances of this case the appellant was estopped to rely on the defense that all premiums had not been paid before the proof of disability had reached the home office of the company. The decisions of the federal courts support the same view. As the law is well established, we deem it unnecessary to do more than cite and briefly refer to a few of the cases supporting this view. One of the most recent cases is that by the Supreme Court in Concordia Ins. Co. v. School Dist., 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528. See, also, Northwestern Casualty & Surety Co. v. Pike & Kramer (C.C.A.5) 53 F.(2d) 791; Globe & Rutgers Fire Ins. Co. v. Stallard (C.C.A.) 68 F.(2d) 237; Fidelity-Phenix Fire Ins. Co. v. Haywood (C.C.A.6) 71 F. (2d) 834; Fidelity & Dep. Co. of Maryland v. Bates (C.C.A.8) 76 F.(2d) 160, 172.

In the late decision by the Circuit Court of Appeals of the Eighth Circuit, Fidelity & Dep. Co. of Md. v. Bates, supra, an instruction to the jury upon the subject of waiver and estoppel by reason of failure to file notice and proof within time is set out in the opinion and approved by that court. We agree with the statement of law as thus approved. It contains an element not present in the case at bar in that there was express assurance that the company would pay the loss, whereas in the case at bar the officers of the company merely held out the hope that it would pay the loss if the appellee could make the proper proof. We think that this difference under the authorities does not require a different decision from that of the Circuit Court of Appeals for the Eighth Circuit.

We have not overlooked the provisions of the policies concerning written waiver. This provision was also capable of waiver and was waived by the action of the company.

Judgment affirmed.