## NEW YORK LIFE INS. CO. v. KASSLY.*
### No. 5980.

Circuit Court of Appeals, Seventh Circuit.
Jan. 5, 1937.

Rehearing Denied Jan. 29, 1937.

SPARKS, Circuit Judge, dissenting.

Rudolph J. Kramer, Bruce A. Campbell, Roland H. Wiechert, R. E. Costello, and Norman J. Gundlach, all of East St. Louis, Ill., for appellant.

Louis Beasley and Edward C. Zulley, both of East St. Louis, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

Appellant seeks a reversal of judgment based upon a double indemnity insurance policy wherein the widow of the insured was beneficiary. Recovery was predicated upon an alleged fact showing of death from septicaemia occasioned by an accident. The contest is limited to the double indemnity phase of the liability. Our decision must turn upon the language of the contract which measures appellant's liability.

The Facts. John Kassly obtained a life insurance policy from appellant for $5,000 with a double indemnity accident provision therein on August 23, 1934. He died September 14, 1934.

On September 7, the insured pulled a hair from his nose with the result that a most profuse bleeding occurred. Shortly

*Writ of certiorari denied 57 S. Ct. 672, 81 L. Ed. ——.

thereafter the nose became swollen and discolored and remained so for a day or two. On the succeeding Sunday his nose swelled, his face became brown, and his eyes watered.

■■ On September 12, the insured was found in a semi-comatose condition in a hotel, and he was removed to a hospital where he died early September 14. The doctors differed in their observations and conclusions. Each emphasized certain symptoms from which he drew conclusions favorable to the party for whom he testified. An extended and detailed statement of such conflicting evidence will not be undertaken because we are satisfied that the cause of the septicaemia was for the jury to determine. Its verdict is conclusive on the court. It found for the appellee.

The sharply controverted question, therefore, arises out of the accident clause —the double indemnity clause of the policy. This provision not only created the liability of the insurer, but it also must be construed in order to determine its application. It determines the question which is before us. Both parties must find support for their contentions in it.

The provision reads:

"The Double Indemnity specified on the first page hereof shall be payable upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected *solely through external, violent and accidental means* and occurred within ninety days after such injury and prior to the anniversary of the Policy on which the Insured's age at nearest birthday is 65; provided, however, that such Double Indemnity shall not be payable if the Insured's death resulted, directly or indirectly, from (a) self-destruction, whether sane or insane; (b) the taking of poison or inhaling gas, whether voluntary or otherwise; (c) committing an assault or felony; (d) war or any act incident thereto; (e) engaging in riot or insurrection; (f) operating or riding in any kind of aircraft, whether as a passenger or otherwise, other than as a fare-paying passenger in a licensed passenger aircraft provided by an incorporated passenger carrier and operated by a licensed pilot on a regular passenger route between definitely established airports; (g) infirmity of mind or body; (h) illness or disease; or (i) *any bacterial infection other than that occurring in con-sequence of accidental and external bodily injury.*"

Briefly stated, it is appellant's position that, in order to recover under the double indemnity provision above quoted, the death must have occurred through accidental *means.* Inasmuch as the extraction of the hair from the nose was not accidental, but was the deliberate act of the insured, double liability under this policy did not arise.

Appellee, on the other hand, argues for one of two alternative constructions of this clause. She insists (a) that the evidence showed that the death resulted from injury effected solely through external, violent, and accidental *means* and (b) that subdivision (i), above quoted, specifically covers the instant case, and she is not compelled to contest appellant's asserted distinction between a death resulting from accidental means and one resulting from accidental bodily injury.

A careful reading of the coverage clause of the policy necessitates the conclusion that appellant there gave to the words "accidental means" a construction from which it cannot now escape. At least three persuasive reasons necessitate this conclusion.

First, the exceptions set forth in the "provided however" clause negative the narrow definition of the term "accidental means" for which appellant argues. Subdivision (i) of the "provided however" clause, in particular, either necessitates the attribution of the meaning of accidental bodily injury to "accidental means" or it constitutes a separate coverage, limited to death resulting from bacterial infection. Generalia specialibus non derogant.

■ Second, the use of the words "accidental means," as used in the first clause, and the words "accidental injury" in subdivision (i) of the "provided however" clause, if they are not consonantal, creates an ambiguity which must be resolved against the insurer who chose the language.

■ Third, the fair and reasonable meaning of the two expressions includes death resulting from injury which grew out of the performance of the intended act of the insured. In other words, the language of this policy (the entire sentence must be construed together) has a tolerably plain and pretty well understood meaning, both with the writers of, and the

subscribers to, insurance. The meaning we should adopt is the one which the insurer had when it sold the policy and which the insured entertained when he paid his premiums. A refinement of meaning—a technical meaning—should not be ascribed to it inasmuch as in the same paragraph the insurer used language which contradicts or modifies such a restricted or technical meaning.

First, so as to focus attention on the point at issue, it may be admitted that the words "accidental means" are words which were intended to limit liability in cases of accidental death. In other words, it excluded deaths which occurred from certain acts which were deliberately and intentionally performed by the insured. In other words, it eliminated suicide. Cases may be found in abundance which support such a conclusion. It would serve no useful purpose to examine the contracts in each case which so held. Likewise, cases purporting to hold the contrary are cited. In view of the admission, however, analysis and discussion of these cases become irrelevant.

In the light of this admission the question is, Why should the policy before us not be so construed?

The answer must be found in the "provided however" clause. If the insurer intended to limit recovery to accidental means cases *and* to escape liability where the intended act resulted in accidental injury and eventually in death, why did it immediately provide that such double liability should not extend to death from "self-destruction, whether sane or insane"? Surely there was no liability if accidental *means* solely determined liability, for one, who sane, deliberately took his life. Why, then, make a separate coverage in the nature of an exception?

How about the second exception in the "provided however" clause? "The voluntary taking of poison or inhaling of gas?"

But the refutation of the meaning for which appellant contends becomes complete when subdivision (i) is examined. There we have not only a conflicting construction of the "accidental means" clause, but an affirmative recognition of a right to recover when death occurs in consequence of accidental and external bodily injury. If there be a legal distinction (not understood by the layman and which might have defeated a sale of the policy if asserted when the insurance was sought) between accidental means and accidental results, it does not exist in the case before us, in view of the applicable clause (i) which covers death from bacterial infection which results from an accidental injury.

Second. It is hardly necessary to discuss the second ground. If it be argued that the first clause limits recovery to cases where death was occasioned by accidental means, then subdivision (i) contradicts such conclusion and creates confusion and ambiguity. In such a situation, the construction of the first clause should be against the insurer. Aschenbrenner v. U. S. F. & G. Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Deer & Son v. Employers Indemnity Corp. (C.C.A.) 77 F.(2d) 175; Sentinel Life Ins. Co. v. Blackmer (C.C. A.) 77 F.(2d) 347.

Third. The third reason supplements the other two. It is not for a court to assume that deceptive language would be adopted by any insurance company which would be susceptible of misunderstanding by the insured. The word "accident" as used in an insurance policy has a pretty well understood meaning. Insurance covering accidents has increased rapidly during the past three decades, and the business is now enormous. Accident insurance policies covering death run into the billions of dollars. True, it is, that the language of each policy governs the liability of the insurer, but when general terms are used, they must be given their commonly accepted meaning. In case of doubt or ambiguity, they should be construed against the insurer. The meaning of the words "accidental means" and "accidental injury" when used in the same sentence in a policy must be construed in the light of this rule and in accordance with the common and general understanding of their meaning.

One case, almost identical in its facts to the instant case, is Maryland Casualty Co. v. Massey (C.C.A.) 38 F.(2d) 724, 728, 71 A.L.R. 1428. There a hair was intentionally pulled from the nose by the insured. The court was confronted by the defense that the *means* were not accidental. Three opinions were written. Two judges held that the policy covered the loss. Judge Hickenlooper said:

"Whatever interpretation may properly be given to the general insuring provision where death occurs as the result of a major surgical operation * * * part G and clause 22 of the policy here involved

relate specifically to septicemia and pyogenic infections, and thus, by familiar rules of construction, remove these subjects of consideration from the general insuring provision, unless the phrases, 'subject to its terms, limits and conditions' and 'effected as hereinbefore provided,' may be said to inject into these sections also, the condition that the wound through which infection enters must not only be accidental in the popular sense, but also wholly disconnected with any intentional act of the insured. Practically all accidental cuts or wounds are directly connected with the performance of some intentional act, working, walking, running, playing, shaving, and the like; and to say that, because the injury, itself purely accidental, was attended by the doing of some such intentional act, it is therefore excluded from the operation of the policy under the quoted phrases, is indeed wholly foreign to popular construction of the passages involved. * * *

"The numerous cases construing the phrase, 'effected through accidental means,' can only be reconciled upon the principle that death or injury is caused by accidental means if some accident, unforeseen circumstance, mishap, or casualty intervenes between the intentional act and the death or injury. This was made the basis of decision in U. S. Mutual Acc. Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60, and practically all cases, whether recovery was allowed or denied, may be so reconciled; just as, in practically all, the insured was engaged in some intentional act when injured. Here we have the intervention of accident or mishap in the unexpected tearing of the mucous membrane, providing a 'port of entry'; the fact of such tear being reasonably inferable, I think, from the evidence. This tear was unanticipated and unforeseen, was not itself an injury for which recovery is sought, for *its* cause was an intentional act; but it may and should be regarded as the intervening and efficient accidental cause of death of the insured, for which compensation is sought. It is thus in itself an 'accidental means,' independent of the antecedent intentional act as a factor of causation. I therefore feel that for both reasons the finding of liability under the policy is correct."

As pointed out in the opinion from which the quotation is taken, the question is not confined to the difference between accidental means and accidental results but also involves the interpretation and application of the words "accidental means" as used in *this policy*.

It seems clear that the act which results in the accident may be deliberately undertaken by the insured and yet in some instances be caused by "accidental means." To illustrate: A college athlete who specializes in hurdling, in a contest with many others and after he had raced thousands of times, trips over a hurdle and breaks his leg. Was the means accidental? Ten people find themselves in a room shut off by a fire, and the only means of escape is through a window ten feet from the ground. Nine of them jump and all of them are uninjured. The tenth hesitates and finally leaps and breaks a leg. Query, as to him was the means accidental? An automobile driver traveling upon a crowded street observes a child suddenly dart in front of his car. To avoid striking the child, the driver turns quickly and strikes a passing car. Was the car injury the result of accidental means? In view of language appearing in the opinion about to be discussed we must hold that each illustration presented a case which was covered by a policy such as we are here considering.

In the late case of Landress v. Phoenix Mut. Life Insurance Company, 291 U.S. 491, 54 S.Ct. 461, 462, 78 L.Ed. 934, 90 A.L.R. 1382, the court held that a death resulting from sunstroke while decedent was playing golf in the sun on a· hot day was not brought about by accidental means. The opinion is interesting for the discussion went beyond the simple fact situation with which the court was confronted. The court there said:

"We do not intimate that injuries resulting from as impalpable a cause as the inadvertent introduction into the body of noxious germs may not be deemed to be effected by external accidental means. See Western Commercial Travelers' Ass'n v. Smith (C.C.A.) 85 F. 401, 40 L.R.A. 653; Jensma v. Sun Life Assur. Co. (C.C.A.) 64 F.(2d) 457. Nor do we say that in other circumstances an unforeseen and hence accidental result may not give rise to the inference that the external means was also accidental. Compare Jensma v. Sun Life Assur. Co., supra; Gustafson v. New York Life Ins. Co. (D.C.) 55 F.(2d) 235. But, in the light of such knowledge as we have, no such inference can arise from the bare

allegation of death by sunstroke, compare Pope v. Prudential Ins. Co. (C.C.A.) 29 F. (2d) 185; Ryan v. Continental Casualty Co. (C.C.A.) 47 F.(2d) 472, with no indication that some unforeseen or unintended condition or combination of circumstances, external to the state of the victim's body, contributed to the accidental result."

The dissenting opinion emphasized the narrowness of the issue and a court's difficulties in attempting to distinguish between accidental results and accidental means. We quote therefrom:

"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog."

In passing, we might observe that avoidance of a Serbonian Bog is not more to be desired than escape from argument by two opposing logomachists.

It may be said in criticism that the above quotation from the majority opinion is obiter. Unless it is, we see no escape from the application of the language "we do not intimate that injuries resulting from as impalpable a cause as the inadvertent introduction into the body of noxious germs may not be deemed to be effected by external accidental means," to the facts in the instant case. Equally significant are the words "Nor do we say that in other circumstances an unforeseen and hence accidental result may not give rise to the inference that the external means was also accidental." From this language, may we not infer that whether the means are accidental may depend upon the existence or absence of an unforeseen result. This majority opinion cites with approval, Jensma v. Sun Life Assur. Co. (C.C.A.) 64 F. (2d) 457, which holds that an effect which cannot be reasonably anticipated from use of means producing it by one not intending to produce such effect is caused by accidental means within the terms of an accident policy which limits liability to death from accidental *means*. Further discussion seems unnecessary.

It would serve no useful purpose to discuss in detail each of the many cases which have been decided by the various appellate courts that bear on the distinctions between accidental means and accidental results. Some cases may be distinguished by the particular language of the contract. In other cases the facts are distinguishable.

Still other decisions cannot be distinguished.

The judgment is affirmed.

SPARKS, Circuit Judge, dissenting.