Quinlan and Tyson, Inc., Appellee and Cross Appellant, v. National Casualty Company, Appellant and Cross Appellee.

Gen. No. 41,601.

Heard in the third division of this court for the first district at the February term, 1941. Opinion filed June 25, 1941. Rehearing denied September 26, 1941.

GEORGE C. BLISS, of Chicago, for appellant.

BURKE, JAMES & BURKE, of Chicago, for appellee; EDMUND WEBSTER BURKE, of Chicago, of counsel, for defendants in error.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Plaintiff, a corporation engaged in the real estate brokerage and management business, had in its em-

ploy as a bookkeeper and cashier at its Evanston office from the year 1923 up to December 18, 1934, a woman named Bertha C. Burnham. On the latter day it was discovered that during the last eight years of her employment she had embezzled $72,297.57. Of this sum she embezzled $33,917.60 up to May 31, 1931; $13,563.94 during the year preceding June 1, 1932; $6,587.97 during the year preceding June 1, 1933; $12,080.57 during the year preceding June 1, 1934, and $6,147.49 from June 1, 1934 to December 18, 1934. On May 26, 1931, defendant issued its fidelity schedule bond No. N-6692, reading, in part, as follows:

"The NATIONAL CASUALTY COMPANY, as Surety, binds itself to pay QUINLAN & TYSON, INC. as Employer, such pecuniary loss as the Employer shall have sustained of money or other personal property (including that for which the Employer is legally responsible) by any act or acts of . . . Embezzlement . . . on the part of any of the employees named in the schedule attached to and hereby made a part of this bond, while in any position or at any location in the employ of the Employer; the suretyship for any employe not to exceed the amount specified in said schedule for such employe, and to begin with the date set opposite the name of the employe and to end, (a) with the date of the discovery by the Employer either of loss thereunder or of dishonesty on the part of the employe, or (b) with the date of the retirement of the employe. from the service of the Employer, or (c) with the date of the termination of the suretyship by the Surety or the Employer in the manner hereinafter set forth.

"PROVIDED: 1. That loss be discovered during the continuance of the suretyship for any defaulting employe or within the twenty-four months immediately following the termination thereof, and that notice of such loss be delivered to the Surety at its office in the City of Chicago within ten days after such discovery. . . .

"3. That in no event shall the liability of the Surety for any one or more defaults of any employe during any one or more years of the suretyship for such employe exceed the amount specified in said schedule for such employe. . . .

"6. That the Surety may increase or decrease the amount of the suretyship on behalf of any employe covered hereby without impairing the continuity thereof. In the event of such increase or decrease the Surety's liability as respects such employe shall not exceed the schedule amount in effect as to such employe when the dishonest act of the employe shall have occurred. Also other employes may be added to said schedule. The Employer shall make written application to the Surety for such increases, decreases or additions, specifying the names of such employes, their location, the effective date and the amount of such increase, decrease or addition. No such increase, decrease or addition shall be binding upon the Surety until the Employer has received the Surety's written acceptance thereof.

"7. That the suretyship on any employe may be terminated by the Surety upon thirty days' written notice to the Employer, or by the Employer upon notice in writing to the Surety specifying the date of termination. Thereupon the Surety shall refund the unearned premium for such suretyship if no claim has been made thereunder." The schedule attached to the bond reads:

"NOTICE OF ACCEPTANCE

(Schedule Bond)

"It is understood that the National Casualty Company does not assume liability during any year or years or for any default or defaults in the aggregate exceeding the amount of its suretyship as determined by the original obligation of suretyship. . . .

"Subject to the conditions of this Company's Schedule Fidelity Bond issued to you, the liability of this Company thereunder, as Surety for the following named employes, is specified as being in the amount and from the date set opposite the names of such employes, respectively." Here follows a list of eighteen employes, numbered from 1 to 18, with the date when the coverage was to become effective as to each, which is shown as June 1, 1931. The schedule also shows the position occupied by each employe, the location where employed, the amount of the coverage and the amount of the premium. Miss Burnham is shown on the list as employe No. 11 and her occupation that of cashier, employed at Evanston, coverage $25,000 and premium $75. Below the list of employes, and pasted thereon, appears another form, entitled "Notice Of Acceptance," signed by defendant, and reading the same as above quoted, starting with the words, "Subject to the conditions," and ending with the word "respectively." On June 1, 1932, defendant issued a document called "Schedule Bond—Anniversary List," reading, in part, as follows:

"SCHEDULE BOND—ANNIVERSARY LIST . . .

"Whereas, the National Casualty Company has heretofore executed a certain Schedule Bond No. N-6692, in favor of Quinlan & Tyson, Inc. — Chicago, Illinois and covering certain . . . employes named in or added to the schedule attached to said bond.

"Now, Therefore, it is hereby understood and agreed that all . . . employes that were covered under said bond before the 1st day of June 1932, and who are not named in the following list, shall be deemed to be deducted from said schedule as of said last mentioned date, unless deducted or canceled therefrom as of some prior date; that all . . . employes that are named in the following list and not already covered under

said bond shall be deemed to be added to said schedule as of said last mentioned date, in the amounts set opposite the names of such . . . employes respectively, and that, in case the amount formerly carried on any . . . employe shall be larger or smaller than the amount set opposite the name of such . . . employe in said list, the former amount shall be deemed to be increased or decreased accordingly, effective as of said last mentioned date; provided that in case of any such increase or decrease the liability of said National Casualty Company on account of such . . . employe shall not exceed in the aggregate the larger of said amounts.'' Plaintiff endorsed its acceptance of the last mentioned ''Schedule Bond—Anniversary List.'' This list contained the names of nineteen employes. Miss Burnham is again shown as No. 11. However, the amount of her coverage is shown as $15,000 and the premium is shown as $49.50. Pasted on this ''Schedule Bond—Anniversary List'' and below the list of the names of the employes, appears a ''Notice of Acceptance,'' reading:

''NOTICE OF ACCEPTANCE

(Schedule Bond)

''It is understood that the National Casualty Company does not assume liability during any year or years or for any default or defaults in the aggregate exceeding the amount of its suretyship as determined by the original obligation of suretyship.'' On June 1, 1933, defendant again issued its Schedule Bond—Anniversary List, which is similar to the one heretofore quoted, the only change therein being that it refers to the employes who were covered under bond No. N-6692 before the 1st day of June, 1933, and shows Miss Burnham as employe No. 10, the amount of coverage $15,000 and the premium $49.50. On June 1, 1934, defendant issued another Schedule Bond—Anniversary List, similar to the ones issued in 1932 and

1933, listing 47 employes and showing Miss Burnham as No. 10. Her coverage is shown as $15,000 and the premium is $49.50.

Plaintiff paid the premiums called for and also complied with the conditions of the bond with reference to giving notice to the defendant and in submitting to defendant in writing its claim and proof of loss. All of the conditions in the bond required to be performed by plaintiff were complied with. Conferences and negotiations were had between the officers and agents of the respective parties. In these negotiations plaintiff contended that the defendant was obligated to pay the sum of $38,379.97 or in any event, $25,000, and defendant contended that the most it was obligated to pay was $15,000. On May 1, 1935, defendant sent to plaintiff a check for $15,000, accompanied by a letter. Plaintiff deposited this check in its bank account and was credited accordingly. Defendant maintains that the acceptance of the check constituted an accord and satisfaction. On January 6, 1936, plaintiff filed its two count complaint in the Superior Court of Cook county. The theory of the first count is that on May 26, 1931, a single bond was issued which secured it against any defalcations on the part of Miss Burnham to the extent of $25,000; that the execution on June 1, 1932, of the agreement entitled ''Schedule Bond—Anniversary List'' was the execution of a new bond for which plaintiff paid a premium of $49.50 for protection against any defalcations by Miss Burnham to the extent of $15,000; that the execution on June 1, 1933, of another ''Schedule Bond—Anniversary List'' constituted the execution of another new bond; that the execution on June 1, 1934, of another ''Schedule Bond—Anniversary List'' was, in effect, the execution of another bond; that the defendant, in effect, executed four bonds which would entitle the plaintiff to full coverage so long as plaintiff continued having defendant write the fidelity insurance covering Miss Burnham. The

theory of plaintiff in the second count is that on May 26, 1931, the bond was a continuing bond, which afforded protection so long as it remained in force; that the agreements entered into on June 1, 1932, June 1, 1933 and June 1, 1934, for which separate premiums were paid, were continuations of the original obligation, in other words, that the bond was a continuing bond affording to plaintiff protection against any pecuniary loss as employer by reason of any act of embezzlement by Miss Burnham from the execution of the original bond on May 26, 1931, until the defalcations were discovered on December 18, 1934, subject to the conditions and limitations contained in the original bond and agreement subsequently entered into, entitled ''Schedule Bond—Anniversary List.'' Under the second count plaintiff maintains that inasmuch as the larger of the amounts during the four-year-period was the sum of $25,000 and inasmuch as there were embezzlements during each of the years, which total a sum in excess of $25,000, that the defendant is clearly obligated by reason of the terms of the bond to pay to plaintiff a liquidated sum of $25,000. Defendant answered, setting up the theory that the bond issued by it was one continuing bond and not renewed each year by the so-called Schedule Bond—Anniversary List; that plaintiff was entitled to recover the sum of $15,000; which amount was paid prior to the filing of the action, and that there was an accord and satisfaction entered into between the parties whereby plaintiff agreed to accept and did accept the sum of $15,000 in satisfaction of the claim under the bond and the anniversary list. The case was tried before the court without a jury. The parties stipulated on the facts. The stipulation contained a clause permitting either party to offer additional testimony not inconsistent with the facts stipulated. There is virtually no dispute as to the facts. The court found that the bond and the Schedule Bond—Anniversary Lists

created a single continuing bond, rather than four separate bonds, finding against the plaintiff on the first count. The court further found that defendant was obligated to pay plaintiff on December 18, 1934, the sum of $25,000; that such sum of $25,000 was liquidated and certain, pursuant to the terms of the bond and the Schedule Bond—Anniversary lists, and that as a consequence thereof the payment of the sum of $15,000 did not constitute an accord and satisfaction and did not serve to release defendant from its further liability to the extent of $10,000. The court further found that the sum of $25,000 was payable not later than five months after December 18, 1934, and that as a consequence plaintiff is entitled to interest on the sum of $10,000 from and after May 15, 1935, at the rate of 5 per cent per annum. The court entered judgment in accordance with the finding, and defendant appealed. Plaintiff filed notice of cross-appeal for the purpose of sustaining its contention that defendant's liability is $38,379.97.

The first proposition urged by defendant is that the fidelity bond and anniversary lists were one continuous contract. Plaintiff insists that the bond and anniversary lists constituted separate and distinct contracts, on each of which the defendant corporate surety is liable to the limit set therein, for defalcations occurring during the term for which each was in force. Under this heading plaintiff argues that where the insured, as in the instant case, pays an annual premium securing coverage for a definite term, it is entitled to annual protection, and that as a consequence each renewal constitutes a separate and distinct contract and obligation. Plaintiff also maintains that insurance contracts should be liberally construed in favor of the insured; that doubt as to the meaning of ambiguous language in the insurance policy will be resolved against the insurer, that doubtful provisions will be liberally construed in favor of the beneficiary, and

that if the bond is obscure and ambiguous and is fairly open to two constructions, it will be construed in favor of the insured and against the insurer. Plaintiff points out that the doctrine of *strictissimi juris,* which favors an individual surety, has no application where the surety is corporate and compensated. Defendant does not challenge the statements of law as to the rules applicable to the construction which the court should place on the language contained in the bond and the anniversary lists. In order to determine the meaning of the obligations assumed by the defendant, the court should and did carefully read all of the language. The documents should be read as a whole and not separately. The parties have cited numerous cases which they assert support their respective contentions. We have read these cases. No good purpose will be served by a lengthy discussion of the cases. The decision of each case depends on the language used by the parties and other pertinent facts therein. We are of the opinion that the bond and the anniversary lists are a single continuing contract and not four separate contracts, and in that respect we agree with the finding of the trial court. The important factor that establishes that the bond and anniversary lists are a single continuing contract is the provision in clause No. 7 of the bond that the suretyship on any employe could be terminated by the surety or by the employer on giving notice in writing. This clause contemplates a continuation of suretyship for no definite specified time. Clause No. 6 provides that plaintiff may increase or decrease the amount of the coverage without impairing the continuity thereof. Although the employe embezzled $13,-563.94 between June 1, 1931 and June 1, 1932, such embezzlement was not discovered until December 18, 1934, or more than four years after the embezzlement took place. The bond and anniversary list being a continuing contract, the plaintiff on discovering the embezzlement had a right to an allowance of its claim

under the provision of clause No. 1 of the bond. Should the bond and each anniversary list be deemed four separate bonds, as plaintiff contends, then the continuity would be broken, and under the provision of clause No. 1 plaintiff could not recover for the loss during the first year as more than twenty-four months would have passed, following the termination of the coverage during the first bond. So also, the provision in the bond to the effect that the defendant does not assume liability during any year or years, or for any default or defaults in the aggregate exceeding the amount of its suretyship, as determined by the original application of suretyship, contemplates that the bond is a continuing bond and not a bond in force for one year. The language used in each of the Schedule Bond—Anniversary Lists contemplates that the bond as originally issued was in force and effect beginning as of June 1, 1931. All of the provisions taken together establish a continuity of one single bond over a period of time commencing with June 1, 1931, up to the time when the bond would be canceled by either party on written notice. Plaintiff argues that "if we are to hold that there is but one contract, then, as a consequence, the plaintiff manifestly received no consideration for the premiums it paid on the second, third and fourth renewal policies." It also argues that it would follow that the only way an employer would be protected would be to take out a new policy in a new company each year. We cannot agree with this reasoning. At the time the bond is issued and at the time each anniversary list is issued the employer is given the protection that he pays for. If he wishes an increased coverage he may have it. However, he must pay an increased premium. In the instant case, plaintiff reduced the coverage after the first year. The employer and the bond company could also write up a different form of policy whereby the coverage could be made continuous and at the same time cumulative.

The parties make their own contract. We are of the opinion that the trial court was right in finding in favor of the defendant and against plaintiff on the first count.

Having concluded that the bond and anniversary lists were one continuous contract, we now turn to the contention of defendant that under the provisions of the bond and anniversary lists it was obligated to pay plaintiff the sum of $15,000 and no more. Plaintiff meets this contention by declaring that if the bond and the lists are to be construed as a single continuing contract, in any event the liability of the defendant is fixed, certain and liquidated in the sum of $25,000, and points out that the embezzlement of Miss Burnham, while the bond was in force, is admitted to be the sum of $38,379.97, constituting an amount, in the aggregate, in excess of $25,000, which is the largest amount in which Miss Burnham was bonded. The first year under the bond ending June 1, 1932, she embezzled $13,-563.94; the second year ending June 1, 1933, she embezzled $6,587.97; the third year ending June 1, 1934, she embezzled $12,080.57, and the fourth year from June 1, 1934, until the discovery of her embezzlement, she embezzled $6,147.49. Under the schedule bond and anniversary lists she was covered to the extent of $25,000 during the first year ending June 1, 1932, and to the extent of $15,000 for the remainder of the time. Plaintiff calls our attention to clauses Nos. 3 and 6 of the bond, to the notice of acceptance and to the language of the Schedule Bond—Anniversary List, and particularly the clause providing ''that in case of any such increase or decrease the liability of said National Casualty Company on account of such employee shall not exceed in the aggregate the larger of said amounts.'' Plaintiff maintains that it purchased insurance in the amount of $25,000 for the first year for which it paid a valuable consideration, and that for the second, third and fourth years it purchased insur-

ance in the amount of $15,000, for which it paid a valuable consideration, and that the liability of defendant is limited in the aggregate to the larger of said amounts, and that the larger of said amounts being $25,000, that is the sum which defendant owes. Plaintiff does not contend, however, that it would have been entitled to recover any more, if the defalcations occurred during any one year, than the amount for which the employe was covered for that year, and in arguing this point states that it secured protection only to the extent of $15,000 during each of the years in which Miss Burnham was bonded for that amount, but that it can recover on the bond up to $25,000, "the larger of said amounts" mentioned in the schedule. Plaintiff also states that defendant was limited in liability for each year for defalcations occurring each year, to the amount of the bond for that year, namely, $25,000 during the first year and $15,000 in each of the following three years, and that applying the construction most favorable to the defendant to the clauses set forth, defendant's "aggregate liability" was limited to and liquidated at the sum of $25,000. We do not agree with the statement that in construing the instrument we should apply the construction most favorable to the defendant. The parties have agreed that the rule is that the language, if obscure or ambiguous, should be construed in favor of the plaintiff and against the defendant. In the schedule attached to the bond Miss Burnham was covered in an amount up to $25,000 commencing June 1, 1931. Commencing June 1, 1932, or after the bond had been in force one year, the amount of coverage on her was reduced to $15,000. The amount of indemnity of $15,000 remained applicable to her beginning with June 1, 1932, up to December 18, 1934, the date the embezzlement was discovered. It was contemplated that the premium for each employe should be paid annually. The primary purpose of the anniversary lists was to show the names

of the various employes, the amount of the coverage, the date when the coverage began and the annual premium for each employe. The bond itself continued in force regardless of the anniversary lists. The first anniversary list refers to the bond covering the employes named in the schedule attached to the bond. It provides, in part, that "in case the amount formerly carried on each employe shall be larger or smaller than the amount set opposite the name of such employe in said list, the former amount shall be deemed to be increased or decreased accordingly, effective as of said last mentioned date; provided, that in case of any such increase or decrease, the liability of said National Casualty Company on account of such employe shall not exceed, in the aggregate, the larger of said amounts." The coverage for Miss Burnham was reduced on June 1, 1932, to $15,000, and remained at that figure until the date the embezzlement was discovered. Between June 1, 1931 and June 1, 1932, when her coverage was $25,000, she embezzled the sum of $13,-563.94. The next year when the coverage was $15,000, she embezzled $6,587.97. The succeeding year she embezzled $12,080.57. During the last year up to December 18, 1934, she embezzled $6,147.49. In no year while the bond was in force did she embezzle any sum in excess of $15,000. Defendant contends that a reasonable construction to be placed on the phraseology of the various clauses in the bond and anniversary lists is that there could be no liability on the part of defendant in excess of $15,000, unless Miss Burnham had embezzled more than $15,000 during the period from June 1, 1931 until June 1, 1932, when the maximum amount of liability for which a corresponding premium was paid, was $25,000. Defendant maintains that if she had embezzled $25,000 or more during the first year of the coverage, the liability of the defendant would have been $25,000 and no more, even though she had embezzled various additional

sums in the succeeding three years, when the indemnity of the bond was decreased to $15,000. It is obvious that if the amount of the coverage for Miss Burnham had remained at $15,000 during the entire period that the bond was in force, there would be no question but that the obligation of the defendant did not exceed $15,000. Defendant declares that the phraseology used in the anniversary lists that "in case of any such increase or decrease the liability of said National Casualty Company on account of such employe shall not exceed in the aggregate the larger of said amounts" simply means that under no condition or situation could the liability of the defendant exceed $25,000. We agree with the contention of the defendant. After the bond had been in force one year neither plaintiff or defendant had any knowledge that Miss Burnham had embezzled any funds. Plaintiff desired to reduce the amount of coverage for this woman, thereby saving a portion of the premium. Plaintiff was protected up to $25,000 for any embezzlement of funds during the first year even though this embezzlement might not have been discovered for several years, as the bond was a continuing bond and the limitation of discovery period would not begin to run until the bond was terminated or the embezzlement discovered. Manifestly, it could not be foreseen during any year that the bond was in force, what amount, if any, any employe would embezzle. If the plaintiff desired to be protected during the entire period of time up to $25,000, it should have paid a premium based on $25,000 coverage for each year that the bond was in force, or secured a bond containing language conforming to what it now contends the present bond provides. We are satisfied that the bond and the anniversary lists under the undisputed facts do not permit plaintiff to recover more than $15,000. The amount embezzled in the first year when the coverage was $25,000 was less than $15,000, and for the remaining three years

when the coverage was only $15,000 plaintiff can only recover the difference between the amount embezzled in the first year and the sum of $15,000, plus interest, if claimed. The proposition of interest will be discussed under another point.

We turn now to a consideration of defendant's contention that the payment to plaintiff of the sum of $15,000 under the circumstances shown by the evidence, constitutes an accord and satisfaction. Plaintiff meets this contention by asserting that the defense of accord and satisfaction is an affirmative one; that the burden of proving it by a preponderance of the evidence in this case was on the defendant; that defendant was required to prove that the claim was unliquidated, and that there was a bona fide dispute; that the record shows that defendant's obligation was liquidated; that defendant in paying an amount less than the amount due, did not create an accord and satisfaction for the balance; that the payment by defendant of a sum admittedly due and payable furnished no consideration for the discharge of an additional and distinct item of liability and did not effect an accord and satisfaction of such distinct item; that the payment to plaintiff on account of an undisputed claim, where there are two or more separate claims and one is undisputed, whereas the other or others are disputed, does not bar the right of plaintiff to sue for and recover on the disputed claim; that there was not a bona fide dispute between the parties, and that hence there could not be an accord and satisfaction. The parties are in agreement that the defense of accord and satisfaction is an affirmative one and that the burden of proving it is upon the defendant. The law of this State is that "where there is a *bona fide* dispute between a debtor and creditor as to how much is due, a payment of the amount claimed by the debtor to be due in full settlement, if accepted by the creditor, is a satisfaction of the claim. . . . The creditor must either accept

what is offered with the condition upon which it is offered or refuse it." (*Kall v. W. G. Block Co.*, 319 Ill. 339, 341.) In *Economy Fuse and Manufacturing Co. v. Standard Electric Manufacturing Co.*, 359 Ill. 504, at page 510, the Supreme Court said:

"A check for a sum less than the amount of a claim as to which there is a *bona fide* dispute, where such check is tendered in full payment of the amount due, cannot be accepted by the creditor without acquiescing in the condition upon which it is tendered." The parties stipulated:

"That prior to May 1, 1935, there were several conferences between the duly authorized agents of the plaintiff and the defendant; that in said conferences the plaintiff contended that the defendant was obligated to pay to the plaintiff a sum not less than $25,000.00, under the provisions of said bond and anniversary lists for the loss incurred to the plaintiff as the result of the embezzlement of said sums of money by Bertha C. Burnham; that in said conferences the defendant contended to the plaintiff that the most the defendant was obligated to pay the plaintiff under the provisions of said bond and anniversary lists was the sum of $15,000.00, which sum the defendant, through its agents, stated it was obligated to pay; that the defendant did offer to pay to the plaintiff the sum of $15,000.00 in full settlement of all liability under the provisions of said bond and anniversary lists resulting from the said embezzlement of the said Bertha C. Burnham.

"That on May 1, 1935, the defendant, through its duly authorized agent, E. M. Kincy, wrote and mailed a letter to the plaintiff, the original of which said letter is marked defendant's 'Exhibit 1' and hereby admitted in evidence.

"That, in said letter dated May 1, 1935, there was enclosed a draft for the sum of $15,000.00, payable to Quinlan and Tyson, Inc.; that said letter and draft

were received by the plaintiff herein, on or about
May 2, 1935; that said draft was endorsed, 'Quinlan
and Tyson, Inc., by H. N. Tyson, Jr.,' and deposited
by the plaintiff in the bank, and the amount of $15,-
000.00 was credited to its account in said bank; that
said draft showing the payment of said $15,000.00
with the various endorsements thereon, subsequent to
the delivery of said draft to the defendant by the plain-
tiff, is hereby admitted in evidence as defendant's
'Exhibit 2.' '' It also appears from the record that
at a conference in February 1935, attended by Howell
N. Tyson, Jr., executive vice president and treasurer
of plaintiff, attorney Edmund W. Burke, representing
the plaintiff, and E. M. Kincy, an adjuster in charge
of the surety claim department of defendant, Messrs.
Tyson, Jr. and Burke contended that under the pro-
visions of the bond, plaintiff was entitled to a minimum
of $25,000, or a maximum of $38,000. They were in-
formed that the legal department of defendant had
advised Mr. Kincy that under the provisions of the
bond and the anniversary lists the defendant was
obligated to pay $15,000 and no more. Mr. Kincy
testified that on May 1, 1935, he was called to the office
of Mr. M. P. Cornelius, who was president of the
Continental Casualty Company, which latter company
had charge of the surety claim department of defend-
ant. From the testimony of Mr. Kincy, it appears
that Mr. Cornelius recognized that plaintiff gave de-
fendant considerable business. Because of the profit-
able business relationship between plaintiff and de-
fendant, and Mr. Kincy being in charge of the claim
department for defendant, Mr. Cornelius asked Mr.
Kincy if there was any way (consistent with the terms
of the bond) by which defendant could pay plaintiff
in excess of $15,000. Kincy testified that he did not
see how defendant could do so; that if business reasons
entered into it, Cornelius would have to decide that,
but from the claim standpoint and from the informa-

tion given him by defendant's legal department, $15,000 was the absolute limit; that Tyson then spoke up and said that they (plaintiffs) would accept it and to conclude the settlement through Tyson, Jr.; that Mr. Cornelius said, "That is all there is to it. You issue the draft and take care of the claim"; that on the next day, May 1, 1935, Kincy got in touch with Tyson, Jr. on the telephone and stated that he presumed Tyson, Sr. had told him of the conversation in Mr. Cornelius' office and that he would send a draft for the amount of $15,000, that it would not be necessary for any special release, and that he would embody a release on the back of the draft so that when the draft was presented to the bank that would be sufficient for the records. On the same day, defendant, through Kincy, sent a letter to plaintiff for the attention of Mr. Howell Tyson, Jr., reading:

"As per telephone conversation of this morning, I am pleased to attach hereto our draft FN-508 in the sum of $15,000.00 in complete settlement of your claim account defalcations of Bertha G. Burnham.

"Your signature on the back of the draft will constitute a complete release." Enclosed with the letter was a draft in the sum of $15,000 payable to the order of plaintiff, with the endorsement on the reverse side thereof, reading:

"Received of National Casualty Company the sum of $15,000.00 in full payment, release, satisfaction, settlement, compromise and discharge of any and all claims arising on account of defalcations on the part of Bertha G. Burnham, on whose behalf bond was issued." The letter and draft were received and plaintiff endorsed the draft immediately below the above quoted language. Plaintiff deposited the draft in its bank, which collected the same and the amount was credited to the account of plaintiff. There was no attempt to contradict the testimony of Mr. Kincy as to the conversation with Mr. Tyson, Sr. in the office of

Mr. Cornelius. We find that defendant proved by a preponderance of the evidence that there was a bona fide dispute as to the amount due plaintiff; and that the latter accepted a draft for the sum claimed by defendant to be due, in a letter making it clear that the acceptance of the draft would constitute a full and complete release of all claims arising on account of embezzlements by Bertha C. Burnham. We reject the contention of plaintiff that defendant's obligation was liquidated. It is manifest from the pleadings, the stipulation and the testimony that there was a bona fide dispute. Nor do we agree with plaintiff's contention that it presented two or more separate claims. Plaintiff presented a single claim. The payment of the $15,000 was not made under conditions indicating a settlement of one or more acts of embezzlement, but was tendered and accepted by plaintiff in disposition of the entire claim. We are satisfied that defendant proved its defense of accord and satisfaction by a preponderance of the evidence.

Plaintiff further argues that the defendant undertook to answer for the defaults of Miss Burnham, and as a consequence is liable for interest from the dates of the embezzlements, plus the principal amount embezzled, and that the total amount thereof is certain and liquidated. We have held that there was a bona fide dispute and that the amount of the claim was not liquidated. Defendant replies by declaring that this point is raised for the first time in this court and that nowhere in the pleadings is there any contention that plaintiff was entitled to recover interest on the sum embezzled from the date of the embezzlement. We agree that the record does not show that the question of interest was discussed or a claim for interest made. The trial court makes no reference to the point in its judgment order. This proposition, not having been presented to or urged in the trial court, cannot be urged in this court.

For the reasons stated the judgment of the superior court of Cook county is reversed and judgment is entered here for the defendant and against the plaintiff for costs.

*Judgment reversed and judgment here.*

DENIS E. SULLIVAN, J., concurs.

MR. JUSTICE HEBEL specially concurring: I am unable to agree to all that is said in the opinion but concur with this conclusion.