## PINKERTON'S NAT. DETECTIVE AGENCY, Inc., v. FIDELITY & DEPOSIT CO. OF MARYLAND.

### No. 8250.

Circuit Court of Appeals, Seventh Circuit.

Oct. 25, 1943.

Rehearing Denied Dec. 2, 1943.

Writ of Certiorari Denied Jan. 31, 1944.

See 64 S.Ct. 523.

470

Guy A. Gladson and Douglas Moir, both of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellant.

Louis L. Dent, Geo. M. Weichelt, John P. Hampton, and Roger D. Doten, all of Chicago, Ill., for appellee.

George F. Barrett, Atty. Gen. of Illinois (William C. Wines, Asst. Atty. Gen., of counsel), amicus curiae.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

The defendant on the first day of September, 1935, executed its surety bond, conditioned upon the faithful performance by Lawrence J. O'Connell of his duties as Chief Security Examiner of the Industrial Commission of the State of Illinois (hereinafter referred to as the Commission), a body charged with the administration of the Illinois Workmen's Compensation Act. Plaintiff was an employer subject to the provisions of such Act, and on August 9, 1935, for the purpose of qualifying as a self-insurer, entered into an Escrow Agreement with the Commission, acting by and through O'Connell, and deposited with the Commission a $10,000 United States Treasury Bond to be held by it as a guarantee for the payment of any awards entered against plaintiff under such Act. This arrangement continued from the date of the Escrow Agreement until May 24, 1941, when plaintiff furnished the Commission an insurance policy in lieu of the aforesaid deposit. Thereupon a request was made for the return of the $10,000 United States Treasury Bond, and on January 30, 1942 plaintiff was informed by the Commission that such bond was missing. It later developed that the bond had been converted

by O'Connell to his own use and has not been returned or made good to the plaintiff.

Both plaintiff and defendant filed motions for summary judgment and the cause was submitted to the court on the pleadings, stipulation of facts and briefs. The court granted defendant's motion for summary judgment in its favor and entered judgment, from whence this appeal comes.

The contested issues may be briefly stated as (1) did the Commission have authority to accept and hold plaintiff's property as security for the payment of compensation provided by the Act? and (2) even so, did O'Connell as Chief Security Examiner of the Commission act in an official capacity in accepting such deposit? Plaintiff argues that both questions must be answered in the affirmative, while the defendant argues to the contrary. In addition, the defendant relies upon the statute of limitation as precluding plaintiff's right to recovery.

The question of the Commission's authority necessarily depends upon a construction of the pertinent provisions of the Act. Sec. 26, Ill.Rev.Stats.1941, Ch. 48, § 163, imposes upon an employer subject to the Act the duty to furnish, and upon the Commission the duty to require, assurance of the employer's financial ability to meet any awards of compensation which may be made to its employees. Par. (a)(1) provides: "File with the commission a sworn statement showing his financial ability to pay the compensation provided for in this Act * * *." Then follows in the same paragraph this provision: "If any such employer fails to file such a sworn statement, or if the sworn statement of any such employer does not satisfy the commission, of the financial ability of the employer who has filed it, the commission shall require such employer to, (2) Furnish security, indemnity or a bond guaranteeing the payment by the employer of the compensation provided for in this Act." Par. (3) authorizes the employer to insure his entire liability to pay compensation in certain authorized insurance carriers. (This paragraph is not involved in this suit.) Par. (4) provides: "Make some other provision, satisfactory to the industrial commission, for the securing of the payment of compensation provided for in this Act."

Sec. 16 of the Act, Ill.Rev.Stats.1941, c. 48, § 153, authorizes the Commission, among other things, to "make and publish rules and orders for carrying out the duties imposed upon it by law * * * and the process and procedure before the board shall be as simple and summary as reasonably may be." The sole rule promulgated by the Commission pertinent to the instant inquiry is rule 39, as follows: "Application for permission to become a self-insurer shall be accompanied by a current financial statement of the applicant, which statement shall show to the satisfaction of the Industrial Commission ability on the part of the employer to discharge accruing liability under the Workmen's Compensation Act. However, no application to become a self-insurer will be entertained by the Industrial Commission unless the applicant for such privilege shall have deposited in the name of an approved trustee and in an approved depositary a fund sufficient to discharge all liability that may have accrued by reason of awards for the payment of compensation that have become final on the date of such application."

It is the position of the defendant that the legislature has neither specified the manner by which an employer is to furnish security nor to whom, and that it has conferred upon the Commission the authority to prescribe such specification by rule. Further, the defendant contends that the Commission having by rule 39 prescribed a certain way, the security cannot be deposited in any other way. On the other hand, it is the position of the plaintiff that the legislature clearly conferred such authority upon the Commission and that rule 39 by its express terms is not applicable to the instant situation.

The question presented has not been decided by an Illinois court. Numerous Illinois authorities are cited, largely on rules of statutory construction, which we find of little benefit. We shall refer to one of such rules for the reason that the court below, in a carefully prepared opinion, appears to have attached considerable weight to its pertinency. The substance of the rule, as stated in People v. Wiersema State Bank, 361 Ill. 75, 85, 197 N.E. 537, 101 A.L.R. 501, is that the expression of one thing or one mode of action in a statutory enactment excludes any other, even though there be no negative words prohibiting it. Predicated upon this rule of construction, it is urged that rule 39, which it is claimed provided the sole method of furnishing security, excludes all other methods. In the Wiersema case and all others which we have examined, the rule was applied solely to a

statutory enactment. In no case, so far as we know, has the expression of one mode of action by rule been held to exclude some other mode of action provided by statute. It is our view that this rule of construction so heavily relied upon is without application.

We have read and reread the statutory language involved and we think it clearly confers upon the Commission the authority to accept from an employer security for the purpose of assuring the discharge of his liability. It is insisted that if the legislature had so intended it would, after the word "furnish," have inserted the words "to the Commission." True, that would have removed all doubt, but we do not think it was necessary. Par. (a) (2) must be read in connection with the other paragraphs of the section. Par. (a) (1) provides for the filing with the Commission of a statement of financial ability. If the Commission is not satisfied with that statement, it shall require the employer to furnish security, etc. Par. (a)(5) authorizes the Commission to demand the filing with it of evidence of compliance with this section. Par. (5)(b) provides that the statement of financial ability or security, indemnity or bond or amount of insurance shall be subject to the approval of the Commission. If it was the intention of the legislature to limit the authority of the Commission solely to an approved depository, it is just as reasonable, and more so in our view, that it would have so declared. Not only was the Commission authorized to accept (1) a financial statement, (2) security, etc., (3) a policy of insurance, but it was authorized (4) to "make some other provision, satisfactory to [it] for the securing of the payment of compensation."

This brings us to a consideration of rule 39 (heretofore quoted), so heavily relied upon by the defendant. It is the position of the defendant that this rule provides the sole and exclusive manner by which an employer may become a self-insurer, that is, by depositing a fund in an approved depository. In the first place, we do not think the rule is capable of such construction. This rule contains two sentences, and it is the second upon which defendant relies. It expressly provides that the fund deposited shall be "sufficient to discharge all liability that may have accrued by reason of awards for the payment of compensation that have become final on the date of such application." Surely this plain, unambiguous language can have no application to an employer who has no liability by reason of awards which have become final. Defendant's interpretation of the rule renders meaningless the first sentence, which, in conformity with Par. (a) (1) of the statute, provides for a financial statement satisfactory to the Commission. While defendant admits that this rule is procedural, it also argues that it is jurisdictional. It must be a novel theory that an administrative agency can by its own rules determine its jurisdiction. We are of the opinion that the jurisdiction of an administrative agency, like that of a court, is determined solely by its creator.

Furthermore, the construction of this rule sought by the defendant would present a serious challenge to its validity. It would nullify at least some provisions of the statute. If the sole manner of complying with the Act is by placing funds in a depository approved by the Commission, what becomes of Par. (a) (1) authorizing the employer to comply by furnishing a financial statement? Of course, it may be argued that the acceptance of such a statement is discretionary with the Commission, but this would not justify the Commission in arbitrarily or capriciously refusing to permit compliance in such manner. The Commission no doubt is powerless to exceed the authority which the legislature has conferred, but on the other hand we do not think it can minimize such authority by rule, and certainly not when such rule is in contravention of the statute.

This brings us to the question of O'Connell's authority to act for the Commission. Of course, if the Commission had no authority to accept plaintiff's deposit, O'Connell was likewise without authority. Having held that the Commission had the authority, we think there is little room to doubt but that O'Connell was acting in his official capacity. The record discloses in numerous ways that he was held out to the public as the agent and representative of the Commission. The letterheads and stationery of the Commission contained the names of the Governor of the State, the members of the Commission and "Lawrence J. O'Connell, Chief Security Examiner." All the correspondence and the Escrow Agreement pertaining to the instant matter were kept in the files of the Commission, properly numbered and indexed.

The same is true of some thirty other cases wherein O'Connell accepted deposits on behalf of the Commission.

■ The defendant attached to its motion for summary judgment an affidavit made by a former chairman of the Commission that O'Connell's authority was limited to an examination of financial ratings of employers who applied to the Commission for self-insurance and to inform them of the amount of securities which should be deposited in the name of a qualified trustee or bank, and that the affiant had no knowledge of any instance where the Commission either acted or assumed to act as a qualified depositary. The fact that this former chairman had no knowledge of what was transpiring in the Commission's office does not alter the law which fixed its authority or the fact that O'Connell was acting on its behalf. No effort was made by the latter to conceal the file containing the matter applicable to plaintiff's deposit. It must be held, we think, that the Commission at least had constructive knowledge of O'Connell's acts and that by the exercise of any kind of diligence would have had actual knowledge. If defendant's position be accepted, it means that plaintiff, from August 9, 1935 (the date of its deposit) until May 24, 1941 (when it furnished an insurance policy), was operating without compliance with the Act. We cannot believe and will not impute to the Commission a degree of negligence which permitted such a situation to exist.

Furthermore, plaintiff, in response to its request for return of its bond, received a letter from the Commission dated July 22, 1941, signed by the chairman of the Commission, advising that it was a rule of the Commission that collateral be held one year from the effective date of the insurance policy, as employees had a right to file a claim during that period of time, and that "if on May 24, 1942, there are no claims, awards or judgments of this Commission, against the Pinkerton's National Detective Agency, your collateral will be released." At that time there evidently was no thought in the mind of the chairman but that the Commission had authority to accept the deposit or that O'Connell had acted outside the scope of his employment.

We are also of the view that there is no merit in defendant's contention that the action is barred by the statute of limitations. The suit was brought July 21, 1942, and it is argued that the action accrued early in 1936 at the time subsequently admitted by O'Connell as being the time when he converted plaintiff's bond to his own use. On this premise it is argued that the Illinois 5-year statute of limitation, Ill.Rev.Stats., Ch. 83, Sec. 16, applicable to action on unwritten contracts, etc., is controlling. Plaintiff disputes this contention and claims that the action is on a written contract and therefore comes within the 10-year statute of limitation, Ill.Rev.Stats.1941, Ch. 83, § 17. A reading of the Illinois authorities leaves us in some doubt as to which contention should prevail, although we are inclined to the view that the suit is upon a written instrument, namely, the Escrow Agreement entered into between plaintiff and the Commission.

■ However, even though the 5-year limitation provision be otherwise applicable, it is not here controlling. This is so for the reason that the action did not accrue at the time O'Connell converted plaintiff's property, as the latter had no knowledge of such conversion until long afterward. In our judgment, plaintiff's cause of action did not accrue until January 9, 1942, when plaintiff made demand for the return of its property and there was a failure to return it, as required by the contract between plaintiff and the Commission. Plaintiff had no right to the return of its property until it had furnished other means for the protection of its employees, in compliance with Sec. 26 of the Act. When that was done, plaintiff made a demand for such return, and it was only upon the Commission's refusal that plaintiff was entitled to bring suit. Selleck v. Selleck et al., 107 Ill. 389.

Holding as we do that the Commission had the authority and that O'Connell was acting within the scope of his employment in accepting on behalf of the Commission plaintiff's United States Treasury Bond, it follows that defendant is liable on its bond in suit. The cause is, therefore, reversed and remanded, with directions that a judgment be entered in behalf of the plaintiff.