MONTGOMERY WARD & CO., Inc., et al. v.
FIDELITY & DEPOSIT CO. OF
MARYLAND et al.

FIDELITY & DEPOSIT CO. OF MARY-
LAND v. PINKERTON'S NAT. DE-
TECTIVE AGENCY.

PINKERTON'S NAT. DETECTIVE AGEN-
CY v. BOSLEY et al.
Nos. 9067, 9068, 9127.

Circuit Court of Appeals, Seventh Circuit.
May 26, 1947.

Rehearing Denied June 30, 1947.

Stuart S. Ball, Horace W. Jordan, and William L. Lamey, all of Chicago, Ill., for Montgomery Ward & Co.

Henry J. Brandt, of Chicago, Ill. (Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., of counsel), for Coach Corporation of Freeport.

Louis L. Dent, Geo. M. Weichelt, John P. Hampton, Roger D. Doten, and Donald W. Nofri, all of Chicago, Ill., for Fidelity & Deposit Co. of Maryland.

John C. Slade, Guy A. Gladson, and Frank B. Gilmer, all of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for Pinkerton National Detective Agency, Inc., et al.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

The involved circumstances and intricacies of these appeals arise from the criminal activities of Lawrence O'Connell, Chief Security Examiner of the Industrial Commission of Illinois (hereinafter called Commission). On September 1, 1935, O'Connell, as principal, and Fidelity and Deposit Company of Maryland (hereinafter called Fidelity), as surety, executed a bond. In the bond, no expiration date was specified. It covered the indefinite duration of O'Connell's employment, but in and by the bond, O'Connell and Fidelity agreed to be bound unto the People of the State of Illinois in the sum of $20,000, conditioned upon O'Connell's faithful performance of his duties as Chief Security Examiner. Among other things, the duties of O'Connell included acceptance on behalf of the Commission of security deposited by employers seeking to qualify as self-insurers under the terms of the Illinois Workmen's Compensation Act. It appears that several employers including Pinkerton's National Detective Agency, Montgomery Ward & Co., and Coach Corporation of Freeport (hereinafter called Pinkerton, Ward, and Coach) made the requisite deposits in escrow.

On July 21, 1942, Pinkerton brought an action on the bond against Fidelity to recover $10,000 on account of O'Connell's conversion of Pinkerton's United States Treasury Bond. In that case, Fidelity claimed the Commission did not have authority to accept and hold Pinkerton's property as security for the payment of compensation provided by the Illinois Workmen's Compensation Act, and even if it did, O'Connell, in accepting the deposit, was not acting in any official capacity for the Commission. Fidelity's contentions were sustained and judgment was entered in its favor, but on appeal to this court (138 F.2d 469) the judgment was reversed and the cause was remanded with direc-

tions to enter judgment in behalf of Pinkerton.

On November 17, 1943, Ward brought action upon the same bond. It alleged that O'Connell converted its $10,000 United States Treasury Bond during 1939 and prior to September 1 of that year. Fidelity answered and filed a cross-complaint in the nature of a bill of interpleader, naming Pinkerton, Ward, Coach, and thirty-two others as cross-defendants. All but the three above named employers were dismissed or barred from taking anything under the surety bond. They, therefore, need not be considered in these appeals.

In cases numbered 9067-68, which have been considered together, appeals are taken by Ward and Coach from the decree adjudging that the maximum liability on the suretyship bond is $20,000, and that Ward and Coach are proper parties to the interpleader and must share $7,290.36 of the bond pro ratably, while Pinkerton, not a proper party to the interpleader, is allowed to recover $12,709.64, the full amount of its claim plus interest on the bond. Fidelity appeals from that portion of this decree which dismissed Pinkerton as a cross-defendant from its cross-complaint in the nature of a bill of interpleader.

In case number 9127, Fidelity is appealing to preserve jurisdiction should this court modify or reverse the District Court in 9067-68 and create an incongruous situation by deciding that Pinkerton must share ratably under the bond without disturbing our opinion in 138 F.2d 469.

The questions presented for our determination are whether (1) liability on the $20,000 suretyship bond was continuous and limited by the face amount of the bond, or cumulative and separate for each year the bond was in effect, and (2) Pinkerton was entitled to be dismissed as a cross-defendant from the interpleader suit and granted a priority over the remaining cross-defendants.

Appellants Ward and Coach argue that the liability of Fidelity under the bond was multiple and cumulative; that Fidelity's liability was not limited to the amount of $20,000; that the payment of annual premiums created a new and additional liabili-

ty of $20,000 for each of the six years (1935-41) that the bond was in effect. In support of this position these appellants point to the bond itself as indicative of yearly renewal coverage and cumulative liability. On the back cover of the instrument is the following inscription:

Dated September 1, 1935

Expires September 1, 1936

This inscription is urged as limiting the tenure of the bond to one year, which, it is claimed, upon payment of the premiums was annually renewed.

■ It is undisputed that the most pertinent factors to be considered in the determination of whether the liability of a suretyship bond is cumulative or continuous are the terms of the bond itself and the acts of the parties in contemplation of the terms of the bond.

As we have already observed, the bond is for an indefinite term. Dated September 1, 1935, it is void only upon O'Connell's accounting to and turning over "to his successor in office, or to such other persons as may be designated by his superior officer, all records, property, money, books and papers, and all other property appertaining to his office * * * that shall come into his hands by virtue of said office * * *." From the foregoing, it is clear that the bond was to remain in force as long as O'Connell remained in office, whether that be for six months or six years. Apparently there was no contractual method for termination by affirmative action of the parties, as none appears on the face of the bond. Our conclusion that this was a bond of indefinite duration is not altered by the notation on the back of the bond that it "Expires September 1, 1936." This notation appears over the name of the Springfield, Illinois agents of Fidelity and would appear to be a record as to the payment of the first year's premium. If, as previously noted, O'Connell's term terminated before the expiration of the first twelve months, the bond in question could not be said to apply to his successor, and it would, therefore, expire before September 1, 1936. Further, this notation is unsigned and there is no reference made to it in the body of

the bond which is authenticated by the signatures of the parties. If no reference is made in the body of the bond to a condition on the back of an agreement, it must be ignored in the construction of the agreement. Couch, Cyclopedia of Insurance Law, § 160 (1929 ed.); Maryland Casualty Co. v. Massey, 6 Cir., 38 F.2d 724, 725, 71 A.L.R. 1428.

■ Moreover, the legal effect of whether the payment of annual premiums creates a new and separate liability each year is answered conclusively by the actions of the parties themselves. As stated by the District Court in his memorandum opinion, "The receipts or invoices for the various annual premiums in the instant case refer in each instance back to the original bond, specifying the number thereof, and setting forth the amount as being the premium due on the various specified dates. None of the receipts or invoices incorporate in any way or refer to the conditions of the original bond, so as to lead to the conclusion that they were considered as new contracts or renewals of the original contract, but express in each instance merely that they are payments of annual premium on bond No. 4081612."

Furthermore, the comparable factual situation cases on the subject of continuous liability as against separate yearly liability seem to be in accord with the above position. In Ætna Casualty & Surety Co. v. First Nat. Bank of Weatherly, Pa., 3 Cir., 103 F.2d 977, the bank sought to be reimbursed for the defalcations of its cashier whose fidelity was insured by Ætna's schedule bond in the sum of $15,000. The bond was to be in force until the termination of the insurance. Over a period of four years the cashier embezzled over $50,000. The bank contended that the coverage was separate for each year. The court held the liability on the bond to be continuous and determined this from the language of the bond itself. As the court said 103 F.2d at page 978, "Upon its face the bond represents a continuous and continuing liability. * * * There is not a word or a phrase in the bond which indicates the creation of successive periods of liability on the part of the appellant."

In Leonard v. Ætna Casualty & Surety Co., 4 Cir., 80 F.2d 205, the question was whether upon the payment of annual premiums a new contract was created to make the surety's liability cumulative. Action had been brought upon a $2,500 bond covering the fidelity of a bank's bookkeeper. In denying the theory of cumulative liability, the court followed the familiar rule of looking to the terms of the bond to determine the intention of the parties. As in our case, the bond was of indefinite duration, and in the payment of annual premiums there was merely a description of the consideration running to the surety. Other well-reasoned cases rejecting the theory that the payment of annual premiums results in cumulative liability in the face of contrary terms in the bond are Brulatour v. Ætna Casualty & Surety Co., 2 Cir., 80 F.2d 834, and Quinlan & Tyson, Inc., v. National Casualty Co., 311 Ill. App. 369, 36 N.E.2d 470. The case of American Surety Co. of New York v. Commonwealth, 180 Va. 97, 21 S.E.2d 748, relied upon by Ward and Coach, held the surety liable for the full amount of the principal's defalcations, but the court based its theory of recovery upon the creation of implied contracts covering definite six-year terms. That such was the intention of the parties was manifest in the earlier separate bonds binding the parties. Likewise, in Ætna Casualty & Surety Co. v. Commercial State Bank, D.C., 13 F.2d 474 (reversed on other grounds, 7 Cir., 19 F.2d 969), the court held that liability on the bond must be cumulative. Otherwise, it would be unconscionable for the surety to accept subsequent premiums, as it did, in view of the possibility of the principal's defalcations exhausting the indemnity of the entire bond in the first year. Under the continuous liability theory no protection could be afforded after the losses equaled the amount of the bond. From this, the court reasoned that no party to the contract would agree to pay for the absence of protection. Be that as it may, it seems to us that the intention of the parties must be sought in the terms of the bond itself.

And little solace is afforded Ward and Coach by Hack v. American Surety Co., 7 Cir., 96 F.2d 939, 945, despite this court's language in that case citing the decision in Ætna Casualty & Surety Co. v. Commercial State Bank, supra, and saying that the "holding the liability on a somewhat similar bond to be cumulative, would undoubtedly be accepted by us but for the fact that there is in the present contract some language which distinguishes that case." Since this court in that case held that the liability of the makers of those bonds was not cumulative but continuous due to the language in the bonds themselves, it is clear that such language was used by way of illustration only.

Finally, we have the question of the status of Pinkerton in the interpleader suit, that is, whether, Fidelity's obligation to Pinkerton having been determined by this court, Fidelity could then resort to interpleader and include Pinkerton. The District Court in ordering Pinkerton dismissed as a cross-defendant, dissolved an injunction pendente lite as to it which had been granted at the motion of Fidelity, and entered a judgment for the full amount of its claim against Fidelity.

Ward, Coach, and Fidelity argue that it was error for the court to dismiss Pinkerton from the interpleader, no matter what the status of Pinkerton's separate action against Fidelity. In the District Court it was contended by Pinkerton, and the court so decided, that its cause of action on the bond was extinguished through merger with the general judgment of this court, and, therefore, Pinkerton was no longer a claimant on the bond; that the judgment and mandate of this court was final and conclusive of the rights of the parties in all subsequent proceedings.

There is no dispute as to the legal applicability of the interpleader to Ward and Coach. The District Court concluded, however, that under the Federal Interpleader Act of 1936, 28 U.S.C.A. § 41 subd. (26), Pinkerton ceased to be an "adverse claimant" on the bond, when its original cause of action against Fidelity had passed into judgment, and, therefore, it could not properly be interpleaded with the other claimants on the bond. The other elements— adverse claimants to the same fund, controversy between citizens of different states, deposit by complainant of the fund in court

—which are essential to the maintenance of an interpleader suit against Pinkerton, are present.

The District Court's holding that Fidelity could not properly interplead Pinkerton in its cross-complaint is founded upon Italiana v. Papa, 204 Ill.App. 343. In that case Papa was the designated beneficiary in a fraternal insurance policy and as such he recovered a judgment upon the policy. To enjoin collection of the judgment, the association filed a bill of interpleader naming Papa and other claimants as defendants. The claims and rights of the others were known to the association at the time of the original action. The association attempted to enjoy two days in court, one at law, and the other in equity. Consequently, complainant's bill was dismissed for want of equity.

On November 17, 1943, after this court had reversed the judgment in favor of Fidelity, Ward filed its suit. Then, for the first time, someone other than Pinkerton claimed to be entitled to recover upon the bond. In the instant case, as before noted, the bond ran to the People of Illinois, and its purpose was to protect up to $20,000 all claimants who lost due to O'Connell's possible dishonesty. True it is, that by its action Pinkerton established a valid claim under the bond, but the validity of other claims, or even the possibility of their existence, was not before the District Court or this court when Pinkerton proved its claim.

■ The right to maintain interpleader under the Federal Interpleader Act has been recognized by the Supreme Court, even after judgment has been obtained by one of the adverse claimants. In Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85, interpleader was filed to determine stock ownership after the two disputants to title had each established their conflicting claims in the courts of separate states. The prior actions were found not to be obstacles to bringing the interpleader suit. See also Dugas v. American Surety Co., 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720. Accordingly, we believe the court erred in dismissing Pinkerton from the bill in the nature of interpleader.

Holding as we do that Pinkerton was a proper party to the interpleader, we think that Pinkerton is an adverse claimant under the bond. This is so, despite the doctrine of merger of the claim into judgment, because at the outset, Pinkerton was an adverse claimant under the bond, and the judgment in its favor merely validated that claim. "The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the technical rules which regard the original claim as merged in the judgment, * * * do not preclude a court to which a judgment is presented for affirmative action (while it cannot go behind the judgment for the purpose of examining into the validity of the claim) from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it." State of Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 292, 8 S.Ct. 1370, 1375, 32 L.Ed. 239. See also American Surety Co. of New York v. Wabash Ry., 8 Cir., 107 F.2d 685; Cutler Hardware Co. v. Hacker, 8 Cir., 238 F. 146. The character and nature of Pinkerton's claim and judgment remain a claim upon the bond, and the judgment can be enforced only by considering Pinkerton as a proper party to the interpleader. That Pinkerton has a valid claim under the bond cannot be questioned, but under the interpleader suit, both Ward and Coach have established claims. That Pinkerton should take priority over the other claimants merely because it was the first to discover its loss and prove its claim, however, is clearly contrary to the spirit of equity. The suretyship bond was designed to protect more than the three claimants here involved, it is true, but as among these three, it seems that if equality is equity, Pinkerton should be made to share the proceeds of the bond pro ratably with Ward and Coach.

The decree is affirmed as to the liability of Fidelity, but reversed as to that portion which dismissed Pinkerton from the interpleader and granted it a priority to the proceeds of the bond. Accordingly the causes are remanded to the District Court for proceedings in conformity with this opinion.